1999 ME 142

**Brent D. HARDY et al.**

v.

**David St. CLAIR d/b/a Wiscasset Raceway.**

Supreme Judicial Court of Maine.

Argued Sept. 10, 1999.
Decided Oct. 15, 1999.

James C. Munch III (orally), Marvin G. Glazier, Vafiades, Brountas & Kominsky, Bangor, for plaintiffs.

Richard L. Suter (orally), George D. Hepner III, Suter & Hepner, P.A., Falmouth, for defendant.

Before RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Brent D. Hardy and Carie Hardy appeal and David St. Clair cross-appeals from a summary judgment entered in the Superior Court (Waldo County, *Marsano, J.*) concluding that a release signed by Brent D. Hardy barred his negligence claim, but did not bar his wife's claim for loss of consortium. We agree with the trial court and affirm the judgment.

[¶ 2] This action arises from injuries allegedly sustained by Brent D. Hardy at the Wiscasset Raceway, a facility owned by David St. Clair. As a condition to Brent's service as a member of a pit crew supporting a race car racing at the raceway, Brent was required to sign a document entitled "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement." Brent was injured when a plank on a set of bleachers at the raceway reserved for members of the pit crews collapsed under him. The trial court granted a summary judgment in favor of the raceway on the basis that the agreement barred Brent's negligence claim, but concluded that the agreement did not bar Carie's loss of consortium claim. This appeal ensued.

I.

[¶ 3] The Hardys contend that the agreement is ambiguous and violates Maine law and public policy and that the peril which caused Brent's injury was not contemplated by the parties. "Courts have traditionally disfavored contractual exclusions of negligence liability and have exercised a heightened degree of judicial scrutiny when interpreting contractual language [that] allegedly exempts a party from liability for his own negligence."[1] *Doyle v. Bowdoin College*, 403 A.2d 1206, 1207 (Me.1979). Accordingly, a release must "expressly spell out with the greatest particularity the intention of the parties contractually to extinguish negligence liability." *Id.* (internal quotations omitted). To discern the parties' intention, we look to the plain language of the agreement.

[¶ 4] The pertinent provisions of the Agreement state that, by signing the document, Brent:

2. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE [Wiscasset Raceway] FROM ALL LIABILITY [*sic*] ... FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFOR ON ACCOUNT OF INJURY TO THE PERSON OR PROPERTY ... ARISING OUT OF OR RELATED TO THE EVENT(S), WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

. . . .

---

1. Wiscasset Raceway cites *Doyle v. Bowdoin College*, 403 A.2d 1206, 1207–08 (Me.1979) and *Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 993 (Me.1983) in support of its contention that, "[u]nder Maine law, release and indemnity agreements exempting the releasee/indemnitee from liability for his or her own negligence are considered lawful and are not against public policy." In *Doyle*, 403 A.2d at 1207 n. 2, we declined to address whether such agreements were unlawful and contrary to public policy, stating:

Because we do not construe the documents executed ... as releases or indemnification

agreements, we have no occasion to reach the further issue whether contractual provisions which relieve a party from liability for that party's own negligence would be unenforceable and void as contravening public policy. *See, e.g., Tunkl v. Regents of University of California*, 60 Cal.2d 92, 32 Cal.Rptr. 33, 383 P.2d 441 (1963); Prosser, Torts § 68 (4th ed.1971).

In *Emery Waterhouse Co.*, 467 A.2d at 993, we stated that "[i]ndemnity clauses to save a party harmless from damages due to negligence may lawfully be inserted in contracts ..., and such clauses are not against public policy."

4. HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE arising out of or related to the EVENT(S) whether caused by the NEGLIGENCE OF RELEASEES or otherwise.

. . . .

6. HEREBY agrees that this Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement extends to all acts of negligence by the Releasees ... and is intended to be as broad and inclusive as is permitted by the laws

. . . .

The Agreement further provides:

I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND ... INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW.

[¶ 5] According to the second and fourth paragraphs of the Agreement, Brent cannot recover for any injuries "arising out of or related to the EVENT(S)." The term "EVENT(S)" refers to Wiscasset Raceway's "Regular Races & 50 Lap Heavyweight." Although Brent did not receive injuries *directly* "arising out of or related to the events," his injuries were related to the events and indirectly resulted from them. The race events did not directly cause the bleachers to collapse under Brent. However, had Brent not been participating in the race events, he would not have been on the section of bleachers that collapsed because that section was reserved for members of the pit crews and not open to the general public.

[¶ 6] In light of other broader language in the Agreement, however, this appeal does not turn on whether the Agreement expressly extinguishes Wiscasset Raceway's negligence liability for injuries *indirectly* arising out of the racing events. The sixth paragraph provides that the scope of the Agreement "extends to all acts of negligence by [Wiscasset Raceway] ... and is intended to be as broad and inclusive as is permitted by the laws." Further, the last portion of the Agreement indicates that Brent intended his signature to be "A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW." Even when strictly construed against Wiscasset Raceway, the Agreement "expressly spell[s] out with the greatest particularity the intention of the parties contractually to extinguish negligence liability." *Doyle*, 403 A.2d at 1207 (internal quotations omitted). In light of the plain language of the Agreement, the trial court did not err in concluding that the Agreement barred Brent's negligence claim.

## II.

[¶ 7] By way of cross-appeal, Wiscasset Raceway contends that the trial court erred in concluding that the Agreement did not bar Carie's loss of consortium claim. Wiscasset Raceway argues that, "under Maine law, although a loss of consortium claim is often referred to as being both 'derivative' and 'independent,' such claims are often greatly limited by statutory and common law defenses associated with the injured spouse's cause of action." Wiscasset Raceway further contends that, regardless, the indemnification provision bars Carie's loss of consortium claim.[2] In response, the Hardys argue that Carie's consortium claim was independent, and

---

2. Although we recognize that the indemnification clause contained in the Agreement may render this determination a Pyrrhic victory,

the existence of that clause, by itself, cannot eliminate the noninjured spouse's claim.

that Brent did not have the ability to release her claim without her consent.

[¶ 8] "For centuries[,] courts have recognized a husband's right to recover damages for the loss of consortium[3] when a tortious injury to his wife detrimentally affects the spousal relationship." *Macomber v. Dillman*, 505 A.2d 810, 813 (Me. 1986). However, "[u]nder common law, a wife had no cause of action for her loss of consortium occasioned by her husband's injuries." *Dionne v. Libbey–Owens Ford Co.*, 621 A.2d 414, 417 (Me.1993). In 1965, in *Potter v. Schafter*, we declined to "judicially legislate" such a cause of action and, instead, deferred to the Legislature so that "the diverse interests affected by such proposition may be heard." *Potter v. Schafter*, 161 Me. 340, 341–43, 211 A.2d 891, 892–93 (1965). In 1967, "[i]n response to our decision in *Potter v. Schafter*, the Legislature enacted section 167–A of Title 19[,] [which] provid[ed] that '[a] married woman may bring a civil action in her own name for loss of consortium of her husband.'" *Dionne*, 621 A.2d at 417 (footnote omitted) (citation omitted). Thereafter, the Legislature repealed section 167–A

and replaced it with the gender-neutral section 302 of Title 14, which provides that "[a] married person may bring a civil action in that person's own name for loss of consortium of that person's spouse." 14 M.R.S.A. § 302.

▪ [¶ 9] As an initial matter, the Agreement did not *directly* bar Carie's consortium claim because she did not sign it and was not a party to the contract. A release is a contract that can only bar a claim if the claimant was a party to the agreement. *See, e.g., Bowen v. Kil–Kare, Inc.*, 63 Ohio St.3d 84, 585 N.E.2d 384, 392 (1992); *Arnold v. Shawano County Agric. Soc'y*, 111 Wis.2d 203, 330 N.W.2d 773, 779 (1983). Hence, the issue facing us is whether, by expressly barring Brent's negligence claim, the Agreement *indirectly* barred Carie's consortium claim. Stated otherwise, we must determine whether a consortium claim is "derivative" or "independent."

[¶ 10] Jurisdictions are divided over whether to treat a loss of consortium claim as a "derivative" or "independent" cause of action with regard to the underlying tort claim.[4] *See, e.g., McCoy v. Colonial Bak-*

---

**3.** The term "consortium" refers to "the nonpecuniary interests a person may have in the company, cooperation, affection, and aid of another." BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 208 (2d ed.1995). "Consortium" means the "[c]onjugal fellowship of husband and wife, and the right of each to the company, society, cooperation, affection, and aid of the other in every conjugal relation." BLACK'S LAW DICTIONARY 309 (6th ed.1990). BLACK'S LAW DICTIONARY further states:

Loss of "consortium" consists of several elements, encompassing not only material services but such intangibles as society, guidance, companionship, and sexual relations. Damages for loss of consortium are commonly sought in wrongful death actions, or when [a] spouse has been seriously injured through [the] negligence of another, or by [a] spouse against [a] third person alleging that he or she has caused [the] breaking-up of [the] marriage. *[A] [c]ause of action for "consortium" occasioned by injury to [a] marriage partner[ ] is a separate cause of action belonging to the spouse of*

the injured married partner and [,] though derivative in the sense of being occasioned by injury to [the] spouse, is a direct injury to the spouse who has lost the consortium.
*Id.* (citations omitted) (emphasis added).

**4.** The terms "derivative" and "independent" are imprecise, and may be misleading. *See,* Jo–Anne M. Baio, *Loss of Consortium: A Derivative Injury Giving Rise to a Separate Cause of Action,* 50 FORDHAM L. REV. 1344, 1351–54 (1982) (noting that "there is no precise definition of a derivative action"). According to another commentator:

Writers have observed that the conflict which has developed in such cases "suggests the need for basic explanations of which there has been something of a shortage" and that a court's adoption of either the derivative or independent approach "sounds more like a conclusion than a reason." The question confusing courts is whether the consortium claim is dependent upon the *injury* or the *injured spouse's cause of action.*
Antonios P. Tsarouhas, *Bowen v. Kil–Kare, Inc.: The Derivative and Independent Ap-*

*ing Co.,* 572 So.2d 850, 856–61 (Miss.1990) (comparing positions of state courts); Carol J. Miller, Annotation, *Injured Party's Release of Tortfeasor as Barring Spouse's Action for Loss of Consortium,* 29 A.L.R.4th 1200 (1984) (analyzing state and federal cases). States adopting the derivative approach generally conclude that a cause of action for loss of consortium is subject to the same defenses available in the injured spouse's underlying tort action. *See* Miller, *supra.* States adopting the independent approach generally conclude that a consortium claim is not subject to such defenses. *See id.*

[¶ 11] Although we have heretofore declined to address whether a consortium claim is "derivative" or "independent," *see, e.g., Morris v. Hunter,* 652 A.2d 80, 82 (Me.1994); *Box v. Walker,* 453 A.2d 1181, 1183 (Me.1983),[5] our case law lends support for the trial court's conclusion that consortium claims are separate, independent causes of action. In *Taylor v. Hill,* 464 A.2d 938, 944 (Me.1983), we recognized that a consortium claim, "though derived from an alleged injury to the person of [the claimant's spouse], constitutes a distinct and separate cause of action." Similarly, in *Dionne,* 621 A.2d at 418, we indicated that a wife's statutory right to bring a consortium claim "belongs to the wife and is separate and apart from the husband's right to bring his own action against the party responsible for his injuries."

[¶ 12] The express language of section 302 offers no support for the conclusion that a consortium claim is entirely "derivative." *See* 14 M.R.S.A. § 302. To the contrary, section 302's provision that a consortium claimant may bring a civil action "in that person's own name" suggests that the cause of action is independent and separate from the underlying tort action of the victim spouse. 14 M.R.S.A. § 302. Further, we have recognized that the Legislature, by enacting the statutory predecessor to section 302, "establishe[d] a separate right to the wife." *Dionne,* 621 A.2d at 418 (holding that damages wife recovered under consortium claim were not subject to husband's employer's lien). Although derivative in the sense that both causes of action arise from the same set of facts, the injured spouse's claim is based on the common law of negligence while the claim of the other spouse is based on statutory law. Each claim is independent of the other and the pre- or post-injury release of one spouse's claim does not bar the other spouse's claim. A consortium claim is an independent cause of action, and, therefore, the trial court committed no error in ruling that the Agreement failed to bar Carie's consortium claim.[6]

The entry is:

Judgment affirmed.

proach to Spousal Consortium, 19 OHIO N.U. L. REV. 987, 990–91 (1993) (citations omitted) (emphasis added).

**5.** In *Box v. Walker,* 453 A.2d 1181, 1183 (Me. 1983), we declined to decide whether a consortium claim is "derivative" or "independent," but noted that "[a]n independent cause of action accrues when the plaintiff is damaged by the negligent conduct of the defendant; the law will imply nominal damages

from any violation of the plaintiff's rights." *Box v. Walker,* 453 A.2d 1181, 1183 (Me. 1983).

**6.** We need not determine whether a loss of consortium claim may be subject to traditional common law or statutory defenses to the claims of the injured spouse. We decide only that a release of the injured spouse's claim does not simultaneously release the loss of consortium claim of the noninjured spouse.