2003 ME 117

**C. Gary LLOYD**

v.

**SUGARLOAF MOUNTAIN
CORP. et al.**

Supreme Judicial Court of Maine.

Argued: June 10, 2003.
Decided: Sept. 25, 2003.

Arthur J. Greif, Esq. (orally), Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for plaintiff.

Evan M. Hansen, Esq. (orally), Preti Flaherty Beliveau Pachios & Haley, LLC, Portland, for Sugarloaf Mountain Corp.

Stephen J. Burlock, Esq., [John A. Woodcock Jr., Esq. (orally) withdrew June 24, 2003], Weatherbee & Burlock, P.A., Bangor, for USA Cycling.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

Majority: SAUFLEY, C.J., and CLIFFORD, RUDMAN, and DANA, JJ.

Dissenting: ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] C. Gary Lloyd appeals from a summary judgment entered in Superior Court (Hancock County, *Gorman, J.*) in favor of Sugarloaf Mountain Corp. and U.S.A. Cycling, Inc., d/b/a National Off–Road Bicycle Association (NORBA), on Lloyd's negligence complaint and on their counter-claims for indemnification. Lloyd argues that the two releases he signed prior to the Widowmaker Challenge mountain bicycle race did not effectively discharge Sugarloaf and NORBA from liability for his injury. He contends that the first release, which he signed when he became a member of NORBA, was superseded by the second release, a race entry release he signed a few days before the race, and the entry release was ambiguous and too vague to exonerate Sugarloaf and NORBA from their own negligence. He further argues that because his injury occurred during a practice run instead of the race itself, the releases are inapplicable, and that, in any event, the releases should be unenforceable as contrary to public policy. In addition, Lloyd argues that a summary judgment should not have been granted to Sugarloaf and NORBA on their claims for indemnification. We affirm the judgment for Sugarloaf and NORBA on the complaint because the membership release unambiguously discharged them from liability for damages caused by their negligence, and affirm the judgment for Sugarloaf and NORBA on their claims for indemnification and the award of attorney fees because the indemnification clause is clear and unambiguous.

## I. BACKGROUND

[¶ 2] Lloyd alleges that he was injured in a bicycle accident in August 1995, when he was participating in a practice session prior to the Widowmaker Challenge at Sugarloaf ski resort. The race was sponsored by NORBA. The injury occurred in a collision with another participant.[1] All parties agreed that race entrants were re-

---

1. The other participant was also initially named a defendant but was later dismissed from the suit.

quired to participate in the practice session.

[¶ 3] Lloyd became a member of NORBA and signed a membership release in June 1995, in which he acknowledged that cycling is an inherently dangerous sport and that his participation was at his own risk. In the membership release, he stated:

> I release and forever discharge [NORBA], its employees, agents, members, sponsors, promoters and affiliates from any and all liability, claim, loss, cost or expense, and waive and promise not to sue on any such claims against any such person or organization, arising directly or indirectly from or attributable in any legal way to any negligence, action or omission to act of any such person or organization in connection with sponsorship, organization or execution of any bicycle racing or sporting event, including travel to and from such event, in which I may participate as a rider, team member or spectator.

[¶ 4] Lloyd signed another release a few days before the Widowmaker Challenge was to take place. In this entry release, Lloyd again acknowledged the dangers of participating in a bicycle event and the possibility of serious injury. The entry release provided:

> I hereby waive, release and discharge ... any and all rights and claims ... against the sponsors of this event, [NORBA], the promoter and any promoting organizations(s), property owners ... through or by which the events will be held for any and all damages which may be sustained by me directly or indirectly in connection with, or arising out of, my participation in or association with the event, or travel to or return from the event.

The entry release also contained an indemnification provision:

> [S]hould I or my successors assert my claim in contravention of this agreement, I or my successors shall be liable for the expenses (including legal fees) incurred by the other party or parties in defending, unless the other party or parties are financially adjudged liable on such claim for wilful and wanton negligence.

[¶ 5] Several years after his injury, Lloyd filed this action against Sugarloaf and NORBA in which he alleges that both entities acted negligently and with willful and wanton negligence. Both entities defended on the ground that the releases barred any claims, and both counterclaimed for indemnification. Lloyd sought a summary judgment on the counterclaims, and Sugarloaf and NORBA sought a summary judgment on the complaint. The court granted a summary judgment to Sugarloaf and NORBA on both the complaint and counterclaims. The court thereafter approved $18,420.50 in attorney fees and an additional amount in costs against Lloyd.

## II. DISCUSSION

### A. The Exculpatory Releases

[¶ 6] Lloyd first argues that the membership release was superseded, replaced, and discharged by the entry release because the entry release is more recent and applies to a specific race, and because the two releases are inconsistent. Lloyd claims that the membership release specifically releases claims of negligence whereas the entry release more generally releases "any and all" claims. Additionally, the entry release contains the indemnification clause providing for legal fees to be assessed against the releaser unless damages for willful and wanton negligence are awarded.

[¶ 7] While these two releases overlap, they are not inconsistent. The fact that

one release specifies negligence and the other is more general does not create an inconsistency nor does the fact that the entry release contains an indemnification clause. There is nothing in the parties' statements of material fact that indicates they intended the entry release to supersede or replace the membership release. In fact, the entry release affirmatively states that only NORBA members, that is, people who had signed a membership release, are allowed to sign up for the Widowmaker Challenge. We fail to discern any inconsistency that would demonstrate that the parties intended that the execution of the entry release would abrogate the membership release. The entry release is unambiguous and consistent with the membership release. Thus, we reject Lloyd's argument that the membership release is inapplicable.

 [¶ 8] In order for the releases signed by Lloyd to absolve Sugarloaf and NORBA of their own negligence, they must "expressly spell out with the greatest particularity the intention of the parties contractually to extinguish negligence liability." *Doyle v. Bowdoin Coll.*, 403 A.2d 1206, 1208 (Me.1979) (internal quotation marks omitted). We strictly construe such releases against the party seeking immunity from liability. *Id.* at 1207–08; *see also Hardy v. St. Clair*, 1999 ME 142, ¶ 6, 739 A.2d 368, 370. The membership release declares with specificity that Lloyd releases and discharges NORBA, as well as any sponsors and promoters, from all liability that arises directly or indirectly from the *negligence* of anyone connected with the sponsorship, organization, or execution of any bicycle race. Unlike the release in the *Doyle* case, 403 A.2d at 1208, but similar to the release in the *Hardy* case, 1999 ME 142, ¶ 4, 739 A.2d at 369, there is a specific reference in the membership release to the negligence of the parties seeking immuni-

ty. We conclude that the membership release, with its express reference to negligence, sufficiently spells out the parties' intent to extinguish the negligence liability of NORBA and Sugarloaf.

 [¶ 9] Lloyd contends the practice or inspection run in which he was injured was not sufficiently connected to the race to be covered by the releases. Given that the parties agree that the practice session was mandatory to participation in the race itself, it would be disingenuous to conclude that the practice run was not, in the words of the membership release, "arising directly or indirectly from or attributable ... to any negligence ... in connection with ... any bicycle racing or sporting event," and, therefore, we reject this contention. *See Hardy*, 1999 ME 142, ¶ 5, 739 A.2d at 370; *see also Barnes v. New Hampshire Karting Ass'n*, 128 N.H. 102, 509 A.2d 151, 155–56 (1986) (holding that participation in a practice lap came within release language of "participating in the event"). Because the practice run was mandatory, any negligence occurring during the practice run was attributable to the bicycle racing event.

 [¶ 10] Lloyd also argues that if the releases are otherwise valid we should nonetheless reject them as violating public policy. We have held that releases saving a party from damages due to that party's own negligence are not against public policy. *Hardy*, 1999 ME 142, ¶ 3 n. 1, 739 A.2d at 369 (citing *Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 993 (Me.1983)).

[¶ 11] Generally speaking, courts holding that similar releases for recreational activities are void as against public policy do so because they find that the activity is a public service or open to the public; the facility invites persons of every skill level to participate; the facility has the expertise and opportunity to control hazards and guard against negligence; the facility is in

a better position to ensure against risks; and broad releases of liability would remove incentives for the facility to manage risks, thereby requiring the public generally to bear the costs. *See Spencer v. Killington, Ltd.,* 167 Vt. 137, 702 A.2d 35, 36–38 (1997) (holding entry form release for ski racing event void as against public policy); *Umali v. Mount Snow, Ltd.,* 247 F.Supp.2d 567, 575 (D.Vt.2003) (applying Vermont law and finding NORBA releases for mountain bike races void as against public policy). An example of an analysis by a jurisdiction holding that releases are not against public policy is *Barnes,* 128 N.H. 102, 509 A.2d 151. In holding that a release of liability of a kart racing facility was valid, the New Hampshire Supreme Court found that the provision of kart racing was neither a public service nor a practical necessity, that the plaintiff was under no compulsion to participate in racing, and, therefore, under no compulsion to sign the release. *Id.* at 155. *See also Schutkowski v. Carey,* 725 P.2d 1057, 1060 (Wyo.1986); *Jones v. Dressel,* 623 P.2d 370, 375 (Colo.1981).

[¶ 12] Even if we had no precedent stating that releases like these are not violative of public policy, we would be hard-pressed on this record to conclude that provision of an event entitled "Widowmaker Challenge" is a public service or that its entrants were under any compulsion to sign the release. We do not accept Lloyd's invitation to overturn our previous decisions.

## B. The Indemnification Provision

[¶ 13] Lloyd's final argument is that judgment should not have been granted to Sugarloaf and NORBA on their counterclaims for indemnification. The court held that Sugarloaf and NORBA were entitled to an award of fees because of the indemnification language in the entry release: "I . . . shall be liable for the expenses (including legal fees) incurred by the other party or parties in defending, unless the other party or parties are financially adjudged liable on such claim for willful and wanton negligence."

[¶ 14] The language in the entry release could not have been clearer. In his application for membership in NORBA, Lloyd not only released both NORBA and Sugarloaf from any and all liability, but also waived and promised not to sue on any such claims. Lloyd, in spite of the fact that he had signed two waivers, asserted claims against both Sugarloaf and NORBA. As we note, the releases signed by Lloyd prevent him from pursuing claims against either Sugarloaf or NORBA. Therefore, neither Sugarloaf nor NORBA will be "financially liable" on any basis, let alone "for willful and wanton negligence." The language of the indemnification clause is unambiguous. Lloyd is contractually bound to indemnify the parties defending for the expense they incurred. The trial court appropriately enforced the contractual obligation assumed by Lloyd.

The entry is:

Judgment for NORBA and Sugarloaf on the complaint and the counterclaims are affirmed. Remand for assessment of attorney fees on the appeal.

CALKINS, J., with whom ALEXANDER and LEVY, JJ., join, dissenting.

[¶ 15] Although I agree with the Court that the membership release, which is unambiguous and specifically refers to negligence, absolves Sugarloaf and NORBA of their own negligence, I write separately because I believe that we should vacate the summary judgment granted to Sugarloaf and NORBA on their counterclaims for indemnification. In my opinion, the indemnification clause, which is contained

in the entry release form, cannot support the judgment for attorney fees against Lloyd because it is unclear and ambiguous.

[¶ 16] In my analysis, I start with the principle that contracts indemnifying a party from the party's own negligence are strictly construed against the indemnitee. In *Emery Waterhouse Co. v. Lea*, 467 A.2d 986 (Me.1983), we said that such contractual provisions are looked upon with disfavor and are construed strictly. *Id.* at 993.

> It is only where the contract on its face by its very terms clearly and unequivocally reflects a mutual intention on the part of the parties to provide indemnity for loss caused by negligence of the party to be indemnified that liability for such damages will be fastened on the indemnitor, and words of general import will not be read as expressing such an intent and establishing by inference such liability.

*Id.* In that case, the tenant had indemnified the landlord "against *any and all claims*" from damages "arising from or out of *any occurrence* in, upon or at the leased premises." *Id.* However, because another portion of the indemnification clause "inferentially suggest[ed]" that attorney fees would be incurred only if the landlord was without fault, we found that the clause was inadequate. *Id.* In *McGraw v. S.D. Warren Co.*, 656 A.2d 1222 (Me.1995), we held that the contract indemnifying the defendant by a third party for "any claims" caused by anyone employed by the third party or the defendant was not sufficiently specific to indemnify the defendant for its own negligence. *Id.* at 1224.

[¶ 17] Secondly, just as with other contracts, we interpret a particular provision in light of the entirety of the agreement between the parties. *See Crowe v. Bolduc*, 334 F.3d 124, 137 (1st Cir.2003) (applying Maine law and finding ambiguity in two agreements read in conjunction). Here, that means that the indemnification clause must be construed in the context of the contract in which it appears. That contract is the entry release.

[¶ 18] Thus, I look at the indemnification clause through the lens of strict construction, knowing that we disfavor such clauses, and in the context of the entire contract, and I proceed to decide whether the indemnification clause is clear and unambiguous. In doing so, I consider whether there are different interpretations that can be given reasonably to the contract. "[A] contractual provision is considered ambiguous if it is reasonably possible to give that provision at least two different meanings." *Villas by the Sea Owners Ass'n v. Garrity*, 2000 ME 48, ¶ 9, 748 A.2d 457, 461.

[¶ 19] The indemnification clause states: "I ... shall be liable for the expenses (including legal fees) incurred by the other party or parties in defending, unless the other party or parties are financially adjudged liable on such claim for willful and wanton negligence." Several lines above the indemnification clause and in close proximity to it, there is other language in the entry release that discharges NORBA and Sugarloaf from "any and all damages" for "any and all claims." Lloyd suggests that the indemnification clause is ambiguous and equivocal because it contains an exception for willful and wanton negligence, whereas the other provision in the entry release exculpates NORBA and Sugarloaf from "any and all claims."

[¶ 20] There are several possible constructions of the indemnification clause. First, there is the interpretation urged by Sugarloaf that the exception for willful and wanton negligence is inapplicable because Maine does not recognize the tort of willful and wanton negligence. Thus, Sugarloaf and NORBA cannot be found liable by a Maine court for willful and wanton negli-

gence, and, therefore, the indemnification clause is consistent with the remainder of the release. NORBA proposes a slightly different interpretation: it could never be found liable for willful and wanton negligence because the entry release excuses it from "any and all claims," which must include willful and wanton negligence. Although both of these interpretations have the effect of negating the willful and wanton exception in the clause, they are reasonable interpretations.

[¶ 21] A third reasonable interpretation is that although the entry release speaks to "any and all claims," it only applies to claims for ordinary negligence. This construction recognizes the principle enunciated in a number of cases and commentaries that exculpatory releases, which immunize a party from its own gross negligence or willful and wanton negligence, are void as against public policy. *Farina v. Mt. Bachelor, Inc.*, 66 F.3d 233, 235 (9th Cir.1995); *Schutkowski v. Carey*, 725 P.2d 1057, 1059 (Wyo.1986); Mary Ann Connell & Frederick G. Savage, *Releases: Is There Still a Place for Their Use by Colleges and Universities?*, 29 J.C. & U.L. 579, 603 (2003) ("Courts generally agree that one may not exonerate [oneself] from liability for willful or wanton misconduct, for gross negligence, or for intentional torts, even if there is broad exculpatory language."); WALTER T. CHAMPION, JR., FUNDAMENTALS OF SPORTS LAW § 11:2 at 209 (1990) ("[I]t is universally held that a release will not bar a claim for gross negligence."). This interpretation anticipates that Maine courts would hold that Sugarloaf and NORBA are not exempt from willful and wanton negligence even though the release may excuse them from all other claims.

[¶ 22] Where the terms of an indemnification clause are not clear and unequivocal, the clause will not suffice to indemnify. *Emery Waterhouse Co.*, 467 A.2d at 993. The indemnification clause here is equivocal, unclear, and ambiguous because it is susceptible to reasonable and differing interpretations. The membership release stands in sharp contrast to the entry release. The former clearly and unambiguously releases NORBA and Sugarloaf for "any and all liability" arising from "any negligence, action or omission to act." The indemnification clause in the entry release provides for the payment of attorney fees "unless the other party or parties are financially adjudged liable on such claim for willful and wanton negligence," but that same document discharges the indemnitees from "any and all claims." The entry release does not unequivocally state that the bringing of a negligence claim against the indemnitee will result in the imposition of costs and attorney fees against the claimant. For this reason, it cannot be the basis for the imposition of an award for attorney fees.[2] Thus, I would vacate the summary judgment on the counterclaim and the award of attorney fees assessed against Lloyd.

---

**2.** At least one jurisdiction has held that an indemnity clause with an attorney fee provision in a recreational activity release is void as against public policy. *Dare v. Freefall Adventures, Inc.*, 349 N.J.Super. 205, 793 A.2d 125, 136 (Ct.App.Div.2002).