STATE OF MAINE
OXFORD, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-09-76

STEVEN & PAULA SUTTON,

      Plaintiffs

      v.

SUNDAY RIVER SKIWAY
CORPORATION,

      Defendant

DECISION AND ORDER

RECEIVED JUL - 8 2011 DISTRICT COURT SOUTH PARIS

This matter is before the court on the motion for summary judgment filed by Defendant Sunday River Skiway Corporation.

## I. BACKGROUND

The facts of this case may be summarized as follows: In September of 2007, plaintiff Steven Sutton purchased a season ski pass to Sunday River Ski Resort. In connection with his purchase, Steven signed a Release titled "2007/2008 Express Acceptance of Risks, Release, Indemnification & Forum Selection Agreement." Virtually every skier who skis at Sunday River signs such a Release.

Sutton alleges that at 11:15 a.m. on December 12, 2007, he was on the Barker Mountain Quad Lift #1 when the wind blew his chair and caused him to fall to the ground. Sutton was at the top terminal of the Barker Mountain Quad Lift #1 when he fell. At the time of his fall, the wind was blowing at a speed of 25 to 35 m.p.h. with wind gusts of at least 40 to 50 m.p.h. On at least two other occasions, skiers have fallen from the same chair lift during similar weather conditions.

Each day at approximately 5:30 a.m. Sunday River receives an early morning forecast of anticipated weather conditions, including wind speeds. Sunday River also

RECEIVED JUL - 8 2011 SOUTH PARIS DISTRICT COURT

that the Release is overreaching and unconscionable. Plaintiffs also contend that Sunday River is a common carrier as to its operation of the ski lift, and that the Release does not bar Paula Sutton's claims for loss of consortium.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when review of the parties' statements of material facts and the referenced record evidence, considered in the light most favorable to the non-moving party, indicates that no genuine issue of material fact is in dispute." *Blue Star Corp. v. CKF Props. LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270, 1276 (citing *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821, 825; *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169, 174); *see also* M. R. Civ. P. 56. A party wishing to avoid summary judgment must present a prima facie case for the claim or defense that is asserted. *Reliance Nat'l Indem. v. Knowles Indus. Serv.*, 2005 ME 29, ¶ 9, 868 A.2d 220, 224-25.

A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶ 8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22.

### B. Release

In its motion for summary judgment, Sunday River contends that there are no material facts in dispute regarding the incident in question or the validity of the Release, and that what remains are issues of law only, appropriately resolved by the court. Because the Release, if valid and applicable, would bar Steven's negligence suit

3

and Paula's associated loss of consortium claims, in order to survive Sunday River's motion for summary judgment, plaintiffs must demonstrate that the Release does not apply, or that the record contains disputed issues of fact regarding the validity and applicability of the Release.

The Law Court has upheld the validity of some releases. In *Lloyd v. Sugarloaf Mountain Corporation*, 2003 ME 117, 833 A.2d 1, the plaintiff was injured in a bicycle accident that occurred while practicing for a bicycling race on a ski mountain in a National Off Road Bicycle Association (NORBA) sponsored bike challenge at Sugarloaf Mountain. Lloyd sued both NORBA and Sugarloaf, alleging negligence, and argued that the releases he signed did not effectively discharge the defendants from liability because the releases were ambiguous, vague, and contrary to public policy. The releases were held to be valid because they "'expressly spell[ed] out with the greatest particularity the intention of the parties contractually to extinguish negligence liability." *Id.* ¶ 8, 833 A.2d at 4 (citing *Doyle v. Bowdoin Coll.*, 403 A.2d 1206, 1208 (Me. 1979)). The Court noted that the "specific reference in the [NORBA] membership release to the negligence of the parties seeking immunity" sufficiently established the parties' intent to absolve the defendants from liability. *Id.* The Law Court held that "releases saving a party from damages due to that party's own negligence are not against public policy." *Lloyd*, 2003 ME 117, ¶¶ 10-12, 833 A.2d at 4-5. Sunday River relies on the Law Court's language in *Lloyd*, but in that case, the releases very specifically covered the activity of downhill mountain bike racing, acknowledged to be a very dangerous activity, in which Lloyd participated at his own risk.

Here, to discern the intent of Sunday River and Steven Sutton and the validity and applicability of the Release, the court must review its plain language. The pertinent provisions of the Release state:

2007/2008 Express Acceptance of Risks, Release, Indemnification & Forum Selection Agreement

. . . .

**INHERENT RISKS**: Be alert to continually changing weather, visibility and surface conditions and other inherent risks including, but not limited to existing and changing snow conditions . . . ; surface or subsurface conditions . . . ; lift towers and components thereof; lights, signs, posts, fences, mazes or enclosures; hydrants, water or air pipes, . . . snowmaking and snow grooming equipment; marked or lighted trail maintenance vehicles and snowmobiles; other man-made structures or objects and their components, and collisions with or falls resulting from such man-made objects; variations in steepness of terrain, whether natural or as a result of slope design; snowmaking or snow grooming operations . . . ; the presence of and collisions with others; and the failure of others to participate in alpine activities safely in control or within their own ability. I agree that these risks are both obvious and necessary to these alpine activities.

As a condition of being permitted to use the ski area premises as a season pass holder, I hereby Promise Not to Sue whichever ski area this pass is used at . . . as I freely and voluntarily accept all risks of injury, death or property damage occurring thereon from the inherent risks such as those listed above or those that can be reasonably be inferred therefrom.

**I further agree to Release, Hold Harmless and Indemnify the Ski Area from any and all liability for personal injury including death, and property damage from any alleged negligence in the operation, maintenance or design of the Ski Area and any other inherent risks of these alpine activities, such as those listed above, and from my participation in alpine activities at the Ski Area. I accept for myself the full responsibility for any and all such damage or injury of any kind that may result from my actions.**

In the Release, Steven acknowledged that he would be engaging in activities that contained a risk of injury. The possibility of being permitted to ride in a chair lift in allegedly dangerously windy weather conditions, and then falling from the chair lift because of such weather conditions resulting in injuries, however, is not listed in the Release, nor is riding in a chair lift listed in 32 M.R.S. § 15217(1)(A), defining the inherent risks of skiing.[2] In fact, 32 M.R.S. § 15217(1)(8)(B) explicitly allows suits such as

---

[2] The statute states:

this one providing: "This section does not prevent the maintenance of an action against a ski area operator for . . . [t]he negligent design, construction, operation or maintenance of a *passenger tramway*." (Emphasis added.)

Additionally, the Release statement that "I further agree to Release . . . the Ski Area from any and all liability for personal injury . . . from any negligence in operation, maintenance or design of the Ski Area," has to be "strictly construe[d] against the party seeking immunity from liability," and the court cannot conclude that this statement in the Release "expressly spell[s] out with the greatest particularity the intention of the parties contractually to extinguish [the] negligence liability" alleged here. *Lloyd*, 2003 ME 117, ¶ 8, 833 A.2d at 7; *see also Hardy v. St. Clair*, 1999 ME 142, ¶ 6, 739 A.2d 368, 370. The Release language is not sufficiently specific and does not address, nor contemplate, the negligence alleged here—that Sunday River would negligently operate its ski lifts, and permit a person to ride in a ski lift in dangerously windy weather conditions, ultimately causing him to fall and sustain injuries.

C.    Common Carrier

Sunday River also contends that it is entitled to summary judgment on Count III of the plaintiffs' complaint, alleging that Sunday River breached its duty as a common

---

"Inherent risks of skiing" means those dangers or conditions that are an integral part of the sport of skiing, including, but not limited to: existing and changing weather conditions; existing and changing snow conditions, such as ice, hardpack, powder, packed powder, slush and granular, corn, crust, cut-up and machine-made snow; surface or subsurface conditions, such as dirt, grass, bare spots, forest growth, rocks, stumps, trees and other natural objects and collisions with or falls resulting from such natural objects; lift towers, lights, signs, posts, fences, mazes or enclosures, hydrants, water or air pipes, snowmaking and snow-grooming equipment, marked or lit trail maintenance vehicles and snowmobiles, and other man-made structures or objects and their components, and collisions with or falls resulting from such man-made objects; variations in steepness or terrain, whether natural or as a result of slope design; snowmaking or snow-grooming operations, including, but not limited to, freestyle terrain, jumps, roads and catwalks or other terrain modifications; the presence of and collisions with other skiers; the failure of skiers to ski safely, in control or within their own abilities.

32 M.R.S.A § 15217(1)(A) (2009).

recreational activity of snowboarding was not of great public importance or necessity such that a special relationship, like a common carrier, was created).

Because the relationship between Sunday River and plaintiffs is not the special kind of common carrier relationship that has to exist for a common carrier duty to be established, the court concludes that Sunday River is entitled to a summary judgment on Count III. "A common carrier is one who holds himself out as engaged in the public service of carrying goods [or passengers] for hire . . . ." *Public Utilities Com. v. Johnson Motor Transport*, 147 Me. 138, 145-46 (1951) (internal citations omitted); *see also Chaput v. Lussier*, 132 Me. 48, 50, 165 A. 573, 574 (1933); *Cumberland Co. v. Pennell*, 69 Me. 357, 367 (1879) ("The rigorous rule governing a common carrier--one whose general occupation is the carrying for hire—has for a long time been established, and it is said to have been founded in necessity.").

In a recent decision, the New Hampshire Supreme Court concluded that even though a ski area was available for public use, the court could not "say that the recreational activity of snowboarding is of such great importance or necessity to the public that it creates a special relationships between the ski area and the plaintiff." *McGrath v. SNH Development Inc.*, 969 A.2d 392, 396-97 (N.H. 2009).

Until our Law Court decides otherwise, the court would conclude that a common carrier relationship does not exist, and that Sunday River owes to the plaintiffs only the standard duty of exercising reasonable care and diligence in the operation of its ski area, including the ski lift, and Sunday River is entitled to summary judgment as to Count III.

D.     Loss of Consortium

Lastly, Sunday River contends that it is entitled to summary judgment on Counts II and IV, plaintiff Paula Sutton's loss of consortium claims, because both claims are

8

derivative of the negligence and common carrier claims. *See* 14 M.R.S. § 302 (2010) ("A married person may bring a civil action in that person's own name for loss of consortium of that person's spouse.").

The Law Court has stated "that a loss of consortium claim and its underlying claim may be separately pursued even though the spouse's loss of consortium injury derives from the other's spouse's bodily injury, both claims arise from the same set of facts, and both claims are subject to the same defenses." *Steele v. Botticello*, 2011 ME 72, ¶ 17, -- A.3d -- (citing *Brown v. Crown Equip. Corp.*, 2008 ME 186, 960 A.2d 1188; *Parent v. E. Me. Med. Ctr.*, 2005 ME 112, 884 A.2d 93; *Hardy v. St. Clair*, 1999 ME 142, 739 A.2d 36).

Because the court concludes that Sunday River is not entitled to summary judgment on plaintiff's negligence claim, its motion for summary judgment on plaintiff's loss of consortium claim based on negligence must be denied. Sunday River, however, would be entitled to the entry of summary judgment on Count IV, Paula Sutton's claim for loss of consortium, based on Sunday River's liability as a common carrier.

Accordingly, the entry is:

> The motion of defendant Sunday River Skiway Corporation for summary judgment as to Count I: negligence, is DENIED.
>
> The motion of defendant Sunday River Skiway Corporation for summary judgment as to Count II: loss of consortium arising from negligence alleged in Count I, is DENIED.
>
> The motion of defendant Sunday River Skiway Corporation for summary judgment as to Count III: liability as a common carrier is GRANTED, and judgment is entered for defendant on Count III.
>
> The motion of defendant Sunday River Skiway Corporation for summary judgment as to Count IV: loss of consortium based on liability as a common

9

carrier is GRANTED, and judgment for defendant is entered on Count IV.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: _July 8, 2011_

_____
Robert W. Clifford
Active Retired Justice

10