STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-18-30

GARY MCCUE,                                    )
                                               )
                        Plaintff,              )
                                               )
v.                                             )
                                               )
ENTERPRISE RENT-A-CAR COMPANY OF               )
BOSTON, LLC, and                               )
PRICE ENTERPRISES, LLC,                        )        ORDER ON DEFENDANT
                                               )        ENTERPRISE RENT-A-CAR'S
                        Defendants.            )        MOTION FOR SUMMARY
                                               )        JUDGMENT AND ON THIRD
**************************************          )        PARTY PLAINTIFF PRICE
                                               )        ENTERPRISES' MOTION
ENTERPRISE RENT-A-CAR COMPANY OF               )        FOR SUMMARY JUDGMENT
BOSTON, LLC, and                               )
PRICE ENTERPRISES, LLC,                        )
                                               )
                Third Party Plaintiff,         )
                                               )
v.                                             )
                                               )
GERALD MACKENZIE                               )
CONTRACTOR, INC.                               )
                                               )
                Third Party Defendant.         )

This matter is before the court on Defendant Enterprise Rent-A-Car's Motion

for Summary Judgment, and on Third-Party Plaintiff Price Enterprises' Motion for

Summary Judgment.

## BACKGROUND

On March 21, 2016, after Plaintiff Gary McCue (McCue) arrived at Enterprise

Rent-A-Car ("Enterprise"), at 270 Kennedy Memorial Drive in Waterville ("the

Property"), he slipped on a patch of ice and sustained personal injuries. After McCue brought suit against Enterprise on or around February 20, 2018, he amended his complaint to add Price Enterprises, LLC ("Price"), the owner of the building in which Enterprise is a tenant. On or around May 16, 2018, Price served Gerald MacKenzie Contractor, Inc. (MacKenzie) with a Third-Party Complaint. MacKenzie had contracted with Price to perform snow removal services on the Property.

Price has owned the complex since 2001. William Mitchell, the sole member of Price, personally managed between four and seven pieces of commercial real estate, including the Property. In addition to the three buildings on the Property, Price directly owns the parking lot, which, under the terms of the lease with Enterprise, is considered a "common area" provided by Price for the general use of the common tenants. Under the terms of the lease, Price is responsible for maintaining the common areas "in a first-class manner," including with respect to removal of snow, ice, and debris. Under Price's agreement with MacKenzie, the parking lot was included in the area that MacKenzie was to provide wintertime maintenance. Additionally, Price's Agreement with MacKenzie includes an exculpatory clause, which states in relevant part: "Gerald MacKenzie, Inc. will not be liable for any slip and fall incidents on property serviced."

2

On the morning of March 21, 2016, McCue planned on dropping off his car at a body shop in Pittsfield and waiting there for an Enterprise employee to deliver his rental car to him. Because of the winter weather and the poor road conditions that morning, however, Enterprise decided against having its employee drop off the car for McCue. Instead, McCue drove to the Enterprise location on the property to pick up his rental, using a loaner provided by the body shop. Upon his arrival at 270 Kennedy Memorial Drive, he found the parking lot covered in snow and he was unable to discern the lines for the parking spaces. Because of this, and because all of the spaces in front of the Enterprise building were occupied, McCue parked his car somewhat awkwardly in the middle of the parking lot. McCue got out of his car as he normally would (left foot out first and then right foot), and as soon as he placed his weight on his feet, he slipped and fell, injuring himself.

## STANDARD OF REVIEW

Summary judgment is appropriate if, based on the parties' statements of material fact and the cited record, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. "In examining the statements of material facts submitted pursuant to subdivision (h), [a] genuine issue of material fact exists when the evidence requires a fact-finder to choose between competing versions of the truth." *Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15,

3

917 A.2d 123 (citing *Farrington's Owner's Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504). Even if one party's version of the facts appears significantly more credible and persuasive, summary judgment is inappropriate "if a genuine factual dispute exists that is material to the outcome." *Arrow Fastener*, 2007 ME 34, ¶ 17, 917 A.2d 123; *see also Emerson v. Sweet*, 432 A.2d 784, 787 n.6 (Me. 1981) ("Thus, the failure of proof, not the relative weight assigned to evidence should control the Court's disposition of the motion."). As the Law Court has stated, although summary judgment "is no longer an extreme remedy, it is not a substitute for trial." *Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18.

## DISCUSSION

Defendant Enterprise and Third-Party Plaintiff Price each bring a motion for summary judgment. Enterprise moves for summary judgment with respect to the two counts against it (Counts I and II of the amended complaint). Price, on the other hand, does not seek to have judgment entered in its favor as to the the two counts against it (Counts III & IV) of the amended complaint or with respect to the two counts it has brought against MacKenzie in its Third-Party Complaint (Counts 1 and 2). Rather, it seeks summary judgment invalidating the exculpatory clause in its contract with Third Party Defendant MacKenzie.

4

<u>Enterprises' Motion for Summary Judgment</u>

Enterprise relies heavily on the lease agreement with Price in arguing for its motion for summary judgment, focusing in particular on a few key clauses. First, the lease agreement provides that

> [e]xcept for damages or injury caused by the willful or negligent act or omission of Tenant, its agents or employees, Landlord will indemnify, defend and hold Tenant, its agents and employees harmless form (sic) any and all liability for injury to or death of any person, or loss of or damage to the property or any person, and all actions, claims, demands, costs (including without limitation, reasonable attorneys' fees), damages or expenses of any kind arising therefrom which may be brought or made against Tenant or which Tenant may pay or incur by reason of the ownership, management, maintenance or use of the Property by Landlord, its agents or employees.

In addition, the agreement states: "[t]he parking areas, Tenant's designated parking spaces, access roads and facilities furnished, made available or maintained by Landlord in or near the Property, including employee parking areas, truck ways, driveways ... provided by Landlord for the general use in common of tenants in the Property and their customers are referred to in this Lease as the 'Common Areas.'" Further, the lease provides: "[l]andlord will operate, maintain and repair the Common Areas in a first class manner for the use and benefit of the tenants of the Property. 'Landlord Common Area Costs' will mean all actual direct costs and expenses reasonably paid or incurred by Landlord in operating and maintaining the Common Areas in the manner described above, including all costs and expenses of protecting, operating, repairing, lighting, cleaning, stripping, removing of snow, ice

5

and debris ....." As noted above, Mr. McCue fell while he was in the parking lot, meaning that he fell within a "common area" as defined in the lease agreement, a fact Price concedes.

It is well-settled in Maine law that a landlord has a duty to its tenants and their invitees to use reasonable care to maintain those areas over which the landlord retains control, including those areas referred to as "common areas." *Thompson v. Frankus*, 151 Me. 54, 55-56, 115 A.2d 718 (1955) ("It is almost universally held that a landlord who has retained control of common stairways owes to his tenants and their invitees the duty of exercising ordinary care to keep such stairways reasonably safe for their intended use."); *Temple v. Congress Square Garage*, 145 Me. 274, 276, 75 A.2d 459, 460 (1950). Key to this understanding is that the landlord must actually retain control over those areas in order for this duty to apply to them. *See Stewart v. Aldrich*, 2002 ME 16, ¶ 13, 788 A.2d 603 ("If landlords retain control over common areas in the rental property, they can consequently be held liable for dangerous conditions in those areas."). In addition, the Law Court has noted that most cases in which a landlord has been held liable for dangerous conditions because of control have generally involved facts where the landlord retained this power pursuant to the terms of a lease. *See id.*

The facts of this case closely parallel the requirements noted in *Aldrich*. Here, Price not only retained ownership and control over the parking lot, but it was also

6

pursuant to the lease. Even though the tenants, including Enterprise, occasionally shoveled the immediately adjacent parking spaces, the lot itself was, pursuant to the lease it signed with Enterprise, controlled by Price. *See Anderson v. Marston*, 161 Me. 378, 381, 213 A.2d 48, 50 (1965) ("[t]he defendant as landlord had control and possession of the passageway in question. Entirely apart from any contractual obligation, this fact imposed upon him the duty to exercise reasonable care and to maintain the passageway reasonably safe for use by the occupants of the premises and by the invited guests of a landlord's tenant."). Price, through its sole member Mr. Mitchell, admitted during depositions that it owned and controlled the parking lot and driveway areas. It was Price's responsibility to take care of and maintain the parking lot, including shoveling and plowing duties during the winter.

In opposing Enterprise's motion, McCue emphasizes that Enterprise operated a business that actively invited patrons to its premises and, as such, owed a duty of reasonable care to its business invitees. It also points out that the cases relied upon by Enterprise do not include any language suggesting that holding a landlord liable prevents holding the tenant liable as well. McCue, on the other hand, cites a number of cases explicitly stating that finding a landlord liable does not preclude liability on the part of the tenant. *See, e.g.*, *Provencher v. United States*, No. Civ.98-233-P-C., 1999 WL 1995211, at *5 (D. Me., July 26, 1999) ("The fact that the Lessor had a duty to maintain the exterior staircase does not foreclose the conclusion that

7

Defendant, as Lessee, also had a duty to maintain the stairway."); *Hopkins v. F.W. Woolworth Co.*, 419 N.E.2d 302, 303 (Mass. App. Ct. 1981) (holding that while reservation of control of premises will subject landlord to liability, tenant is not thereby automatically relieved of duty or liability); *Bailey v. Schaaf*, 494 Mich. 595, 607, 835 N.W.2d 413, 420 (2013) ("[a] landlord and merchant have coextensive duties to protect invitees and tenants from physical hazards on the premises."). None of these cases, of course, constitute binding precedent on this court.

Nevertheless, McCue points to the Law Court's decision in *Baker v. Mid Me. Med. Ctr.*, 499 A.2d 464 (Me. 1985). There, the Court agreed that a lessee of land may also be liable for injuries that occur on it: "MMMC, nonetheless, as sponsor of the event, planned the exhibition, controlled admissions, collected the admission price, retained whatever profit was derived therefrom, and had the right to use the golf course in order to invite the public to attend the event. *Because it retained concomitant control over the event*, MMMC is not relived of its non-delegable responsibility to make the premises reasonably safe for its invitees, including its obligation to ensure that Waterville C.C. adequately supervised the crowd." *Mid Me. Med. Ctr.*, 499 A.2d at 468 (emphasis added).

In *Libby v. Perry*, 311 A.2d 527, 535 (Me. 1973), the Law Court noted that "[c]ourts generally, in analogous situations, have extended the duty of the invitor to his business invitees beyond the precise boundaries of the premises under his control

8

or occupancy to include the approaches which they are expressly or impliedly invited to use or which they would be reasonably expected to use, even though these approaches be not under the invitor's absolute control." Furthermore, the *Libby* Court explicitly included the adjacent parking lot in this consideration, stating "[i]t is true that the rental agreement did not purport to 'lease' the public parking lot adjacent to the armory building, nor any walkway or driveway leading thereto from the public highway. The evidence is clear, however, that the approaches to the Armory and the parking lot were always used in the past in connection with activities conducted at the Armory under similar rental agreements as existed in the instant case." *Id.* Thus, even though Enterprise retained little to no direct control over the parking lot, and Price retained almost absolute control over it, the language from *Libby* suggests that this is not necessarily dispositive.

"Whether a person owes a duty of care to another is a question of law." *Denman v. Peoples Heritage Bank*, 1998 ME 12, ¶ 4, 704 A.2d 411. Even though Enterprise retained little to no direct control over the parking lot, the *Libby* Court's explicit language suggesting that this does not necessarily resolve the issue, persuades the court that Enterprise's Motion for Summary Judgment should be denied, and the question of Enterprise's liability should be allowed to go to the factfinder. Since their lease agreement states that Price will indemnify Enterprise "[e]xcept for damages or injury caused by the willful or negligent act or omission of

9

Tenant [Enterprise]," the issue will ultimately be whether Enterprise was negligent, a question of fact for the jury. Enterprise's Motion for Summary Judgment will be denied.

## Price's Motion for Summary Judgment

Price has brought its' motion for summary judgment to have the court decide the enforceability/validity of the exculpatory clause in its contract with MacKenzie. As previously noted, the contract between Price and MacKenzie states that "Gerald MacKenzie, Inc., will not be liable for any slip and fall incidents on property serviced."

Although exculpatory and indemnity clauses are permissible under Maine law, the Law Court has noted that "[c]ourts have traditionally disfavored contractual exclusions of negligence liability and have exercised a heightened degree of judicial scrutiny when interpreting contractual language [that] allegedly exempts a party from liability for his own negligence." *Hardy v. St. Clair*, 1999 ME 142, ¶ 3, 739 A.2d 368, *overruled on other grounds by Brown v. Crown Equip. Corp.*, 2008 ME 186, 960 A.2d 1188. Thus, "[i]n order for the releases ... to absolve [MacKenzie] of [its] own negligence, they must 'expressly spell out with the greatest particularity the intention of the parties contractually to extinguish negligence liability." *Lloyd v. Sugarloaf Mt. Corp.*, 2003 ME 117, ¶ 8, 833 A.2d 1 (quoting *Doyle v. Bowdoin Coll.*, 403 A.2d 1206, 1208 (Me. 1979); *see also Emery Waterhouse Co. v. Lea*, 467 A.2d

986, 993 (Me. 1983) ("... words of general import will not be read as expressing such an intent and establishing by inference such liability."). Courts strictly construe such releases against the party seeking immunity from liability. *Emery Waterhouse*, 467 A.2d at 993. "If an express agreement exempting the defendant from liability for his negligence is to be sustained, it must appear that its terms were brought home to the plaintiff ...." *Doyle*, 403 A.2d 1206, 1207 (Me. 1979) (quoting Prosser, *Torts* § 68 (4th ed. 1971)).

Price argues that even though the exculpatory clause releases MacKenzie from liability for slip and fall incidents, the language is insufficiently particularized because it fails to include an "express, particularized provision releasing [MacKenzie] from *its own negligence or breach of contract*." (emphasis added). MacKenzie argues that the exculpatory clause is enforceable because it "'clearly and unequivocally reflects a mutual intention,' *see Emery Waterhouse*, 467 A.2d at 993, to preclude liability for MacKenzie as a result of 'slip and fall accidents.'"

Much of the language from the case law seems to agree with Price that such exculpatory clauses must mention a release from the defendant's *negligence* in order for a court to enforce them. *See, e.g., Sugarloaf Mt.,* 2003 ME 117, ¶ 8 ("We conclude that the membership release, with its express reference to negligence, sufficiently spells out the parties' intent to extinguish the negligence liability of NORBA and Sugarloaf."); *Hardy v. St. Clair*, 1999 ME 142, ¶4; *Emery Waterhouse,*

11

467 A.2d at 993; *Doyle,* 403 A.2d at 1208 – 09. All of those cases specifically mention the term negligence when ruling on the enforceability of the exculpatory clauses in question. *See, e.g., Sugarloaf Mt.*, 2003 ME 117 ¶ 8 ("The membership release declares with specificity that Lloyd releases and discharges NORBA, as well as any sponsors and promoters, from all liability that arises directly or indirectly from the *negligence* of anyone connected with the sponsorship, organization, or execution of any bicycle race.") (emphasis in original); *Doyle*, 403 A.2d at 1208 ("The documents executed by Leonard and Margaret Doyle contain no express reference to defendants' liability for their own negligence."). Thus, the lack of specific mention of "negligence" in the exculpatory clause favors Price's argument.

Price's citation to *Zemco Indus., Inc. v. FCW Techs., Inc.*, KEN-CV-02-85, 2005 WL 2723800 (Me. Super. Apr. 4 2005) (Marden, J.) is particularly powerful because of how closely the facts in that case align with the facts in this case. In *Zemco*, after the plaintiff's food was exposed to odors from chemicals used in the installation of new layered resin floors, the defendant relied on the exculpatory clause in their contract which stated that "Customer understands that FCW is not liable for odor entering coolers and damaging food product." In other words, the exculpatory clause mentioned the exact damages that the plaintiff suffered, similar to how the exculpatory clause in this case mentioned slip and fall incidents

12

specifically. Nevertheless, the Superior Court in *Zemco* found that clause insufficiently particularized, stating:

> it is apparent that the release is inadequate to relieve FCW of liability for its own negligence that leads to the contamination of or other damage to Kirschner's food product. Indeed, the above-quoted language falls far short of stating with the 'greatest of particularity' any intent to absolve the Defendant of negligence liability. Given the lack of any express reference to negligence, and that the Court must construe the release strictly against FCW, FCW's argument must fail.

*Zemco Indus.*, 2005 WL 2723800 at *6. As in *Zemco*, the exculpatory clause foresaw exactly the type of damage that ended up occurring, yet, because of the lack of any specific mention of FCW's negligence in causing that damage, the court found that the clause fell "far short" of being sufficiently particularized to be enforced and bar the plaintiff's claim.

The court's reading of the cases is that an exculpatory clause seeking to absolve a party from liability for its' own negligence must "expressly spell out with the greatest particularity the intent of the parties contractually to extinguish negligence liability." *Lloyd*, 2003 ME. 117, ¶ 8; *Doyle*, 403 A.2d at 1208. It may very well be that Price and MacKenzie mutually understood and intended to eliminate liability for MacKenzie for its own negligence in "slip and fall incidents," but the law requires more than an assumption or inference to that effect. Rather, it must be "expressly spell[ed] out."

13

## CONCLUSION

The entry is:

Defendant Enterprise's Motion for Summary Judgement is DENIED. Third Party Plaintiff Price's Motion for Summary Judgment is GRANTED, such that the third-party complaint against Third Party Defendant MacKenzie is not barred by the exculpatory clause of the contract dated September 22, 2015.

The clerk is directed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: March 12, 2020

Entered on the docket 3/16/20

William R. Stokes
Justice, Superior Court

14