2005 ME 112

James PARENT

v.

**EASTERN MAINE MEDICAL CENTER et al.**

Supreme Judicial Court of Maine.

Argued: April 27, 2005.

Decided: Oct. 26, 2005.

Bradford S. Macdonald (orally), Macdonald & Dalton, P.A., Bangor, for plaintiff.

George C. Schelling, Renee L. Inman (orally), Gross, Minsky & Mogul, P.A., Bangor, for EMMC and Devereaux, defendants.

Philip M. Coffin III, L. Dennis Carrillo (orally), Lambert Coffin, Portland, for Dahl–Chase Diagnostic Services, defendant.

David C. King, Debra A. Reece (orally), Wendy A. Brown, Rudman & Winchell, L.L.C., Bangor, for Dahl–Chase Pathology Assoc. and Kaiser, defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

Majority: CLIFFORD, DANA, CALKINS, and LEVY, JJ.

Dissenting: SAUFLEY, C.J., and ALEXANDER, J.

DANA, J.

[¶ 1] James Parent appeals from a summary judgment entered in the Superior Court (Penobscot County, *Mead, J.*) in favor of the defendants, Eastern Maine Medical Center (EMMC); Dr. Daniel Devereaux; Dahl–Chase Diagnostic Services; Dahl–Chase Pathology Associates, P.A.; and Dr. John Kaiser. The trial court determined that James's loss of consortium

claim was barred because he failed to join his wife's claim for medical malpractice. Because we determine that joinder of the claims was not required, we vacate the judgment.

## I. BACKGROUND

[¶ 2] At the time the events giving rise to this case occurred, James and Karen Parent were married. They had one daughter, born in 1994. The Parent family lived in the Bangor area.

[¶ 3] In June 2000, Karen had a sample of tissue removed for biopsy at EMMC by Dr. Daniel Devereaux. The biopsy was tested by Dahl–Chase Diagnostic Services. Several days after the biopsy, Dr. Devereaux informed Karen that the results revealed she had breast cancer. For several months, the Parents traveled to and from Boston seeking a second opinion and further tests. Ultimately, it was determined that the biopsy results had been mixed with those of another patient, and that Karen did not have cancer.

[¶ 4] Sometime in 2001, Karen filed a notice of claim, pursuant to 24 M.R.S.A. § 2853 (2000 & Supp.2004), alleging medical malpractice on the part of EMMC, Dahl–Chase Pathology Associates, and Dahl–Chase Diagnostic Services. James was aware of her claim when it was filed, and he occasionally spoke with Karen's attorney when the attorney would telephone with questions.

[¶ 5] In the summer of 2001, after Karen had filed her notice of claim, she and James separated. Karen subsequently filed for divorce. A judgment of divorce was entered in the District Court (Bangor, *Gunther, J.*) in January 2002. As part of its property division, the divorce court awarded James his loss of consortium claim stemming from the misdiagnosis of Karen's cancer. The court further ordered Karen to "notify [James] before any final settlement is made, and to notify [James] of the result of any panel hearings."

[¶ 6] In a letter to James dated January 2, 2003, Karen's attorney informed him that Karen would be settling her claim "very soon and without any Panel Hearing." On January 3, 2003, Karen executed an affidavit regarding her claim in which she indicated that the alleged negligence and medical issues relating to her misdiagnosis "were not the precipitating cause of breakup of my marriage to James M. Parent, Jr." Karen settled her claim sometime in the month of January.

[¶ 7] James filed notices of claim for loss of consortium against each of the defendants in May 2003. After the panel chair gave James leave to proceed in Superior Court, the defendants filed motions for summary judgment arguing that James had waived his claim by failing to join Karen's claim before she settled.[1]

[¶ 8] The court granted the defendants' motions for summary judgment. The court observed that the question was one of first impression in Maine. The court also noted that authorities outside the State were in conflict as to whether a spouse must join a loss of consortium claim with the injured spouse's negligence action. The court chose to rely on the RESTATEMENT (SECOND) OF TORTS § 693 (1977), and ruled that:

---

1. Defendant Dahl–Chase Diagnostic Services also argued that James's loss of consortium claim terminated upon his divorce, that the undisputed material facts prevented James from succeeding, and that the principle of res judicata barred James's claim. These arguments were not addressed in the Superior Court's order, and we do not consider them in this opinion.

The willful failure of an individual to join a claim for loss of consortium with a principal claim pending on behalf of his or her spouse constitutes a waiver of such claim unless the person is unaware of the pendency of the claim or is prohibited from joining or filing a contemporary collateral action by some circumstance beyond his or her control.

[¶ 9] The court determined that James was "well aware" of the pendency of Karen's claim and its imminent settlement. Because his failure to join Karen's claim constituted a waiver of his loss of consortium claim, the court granted the defendants' motions for summary judgment. James appealed the judgment.

## II. DISCUSSION

[¶ 10] We review the trial court's grant of a summary judgment de novo for errors of law. *Radley v. Fish,* 2004 ME 87, ¶ 6, 856 A.2d 1196, 1198. This case requires us to decide whether a person who fails to join in his spouse's tort action is barred from pursuing his own loss of consortium claim stemming from the same facts. Other jurisdictions are split as to the proper approach. *See* Michael P. Sullivan, Annotation, *When Must Loss-of-Consortium Claim be Joined with Underlying Personal Injury Claim,* 60 A.L.R.4th 1174 (1988 & Supp.2005). Some states require joinder. *See, e.g., Buckley v. Nat'l Freight, Inc.,* 90 N.Y.2d 210, 659 N.Y.S.2d 841, 681 N.E.2d 1287, 1290 (1997); *Brown v. Metzger,* 104 Ill.2d 30, 83 Ill.Dec. 344, 470 N.E.2d 302, 304 (1984); *Butz v. World Wide, Inc.,* 492 N.W.2d 88, 91 (N.D.1992). Others do not. *See, e.g., Kotsiris v. Ling,* 451 S.W.2d 411, 412 (Ky.1970); *Reid v. Spadone Mach. Co.,* 119 N.H. 198, 400 A.2d 54, 55 (1979); *Lund v. Caple,* 100 Wash.2d 739, 675 P.2d 226, 230 (1984). Many of these jurisdictions draw upon their previous case law analyzing the basic nature of a loss of consortium claim. We therefore begin with a review of Maine law regarding loss of consortium actions.

[¶ 11] Loss of consortium actions are authorized by 14 M.R.S.A. § 302 (2003): "A married person may bring a civil action in that person's own name for loss of consortium of that person's spouse." This statute was enacted in response to our decision in *Potter v. Schafter,* 161 Me. 340, 211 A.2d 891 (1965), which applied the common law rule rejecting any cause of action for loss of consortium. *Id.* 341–43, 211 A.2d at 892–93. The only substantive legislative history regarding the provision is a floor speech emphasizing the individual value of the claim. *See* 1 Legis. Rec. 370 (1967) (stating that "this is a valuable right," and "one of the great rights of recovery").

[¶ 12] In *Dionne v. Libbey–Owens Ford Co.,* 621 A.2d 414 (Me.1993), we determined that the loss of consortium statute was enacted to provide "a separate right to the wife." *Id.* at 418. In *Dionne,* an employee of the defendant was injured in the scope of his employment. *Id.* at 415. The employee received workers' compensation benefits, and his employer took a statutory lien on any damages recovered by the employee. *Id.* The employer then sought to enforce the lien against the proceeds of a settlement of the employee's wife's loss of consortium claim. *Id.* at 416. Because the loss of consortium statute created a separate cause of action for the spouse, we held that any damages awarded to a wife for loss of consortium were not subject to the employer's setoff. *Id.* at 418.

[¶ 13] In *Hardy v. St. Clair,* 1999 ME 142, 739 A.2d 368, we determined that a spouse's loss of consortium claim is an independent cause of action that was not barred by a release signed by the injured spouse. *Id.* ¶ 12, 739 A.2d at 372. In

*Hardy,* the husband was hurt when a bench he was sitting on collapsed at a raceway. *Id.* ¶ 2, 739 A.2d at 369. Prior to his injury, he had signed a release of liability for any claims against the raceway arising out of race events. *Id.* ¶ 5, 739 A.2d at 370. He filed a claim against the raceway that was joined with his wife's claim for loss of consortium. *Id.* ¶ 1, 739 A.2d at 369. The trial court determined that the husband's claim was barred by the release, but that the loss of consortium claim was not. *Id.* We affirmed, concluding that a spouse's loss of consortium claim is independent of the injured spouse's action. *Id.* ¶ 12, 739 A.2d at 372. We found of particular significance the statute's authorization of the non-injured spouse to bring the claim "in [their] own name."

> Although derivative in the sense that both causes of action arise from the same set of facts, the injured spouse's claim is based on the common law of negligence while the claim of the other spouse is based on statutory law. Each claim is independent of the other and the pre- or post-injury release of one spouse's claim does not bar the other spouse's claim.

*Id.*

[¶ 14] The language of section 302, its legislative history, and our decisions in *Dionne* and *Hardy,* taken together, establish that Maine's loss of consortium statute provides an individual with a wholly separate and independent right of recovery. We also note that section 302 contains no statutory requirement of joinder, unlike other provisions of the Maine Revised Statutes. *See, e.g.,* 14 M.R.S.A. § 5963 (2003) ("When declaratory relief is sought, all persons *shall be made parties* who have or claim any interest which would be affected by the declaration . . . .") (emphasis added); 10 M.R.S.A. § 3255(1) (1997) (allowing mechanics' liens to be "preserved

and enforced by action against the *debtor and owner* of the property affected") (emphasis added).

[¶ 15] In *Kotsiris,* the Kentucky Supreme Court determined that there was no reason to impose a rigid joinder requirement. 451 S.W.2d at 412. The court cited its determination that the loss of consortium claim was "separate and distinct" from the injured spouse's claim. *Id.* The court also determined that any concerns about double recovery could be addressed by careful limitations on the types of damages allowed. *Id.* Other courts have also found that a party's right to bring an independent cause of action should be free from judicially created restraints. *See Rosander v. Copco Steel & Eng'g Co.,* 429 N.E.2d 990, 991–92 (Ind.Ct.App.1982) (stating that "judicial economy should never be the basis for the elimination of a party's right to maintain a valid cause of action").

[¶ 16] We believe this approach is most consistent with the language of 14 M.R.S.A. § 302 and our decisions in *Dionne* and *Hardy.* Given the Legislature's explicit grant of the right to bring a loss of consortium action in one's own name, and absent any evidence of legislative intent to require the mandatory joinder of loss of consortium claims, we decline to impose such a requirement pursuant to our judicial authority.

[¶ 17] To the extent that allowing separate actions presents a real threat of double recovery or inconsistent obligations, there is an adequate remedy available to defendants under the Maine Rules of Civil Procedure. A defendant may move pursuant to M.R. Civ. P. 19(a) to join a plaintiff to any pending lawsuit if disposition of the action without that plaintiff would "leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obli-

gations by reason of the claimed interest." M.R. Civ. P. 19(a)(2)(ii). *See Stapleton v. Palmore,* 250 Ga. 259, 297 S.E.2d 270, 272–73 (1982).

[¶ 18] In this case before us, there is little danger of double recovery or inconsistent obligations. The defendants have yet to litigate this case even once. Because the trial court incorrectly believed that James's action was barred by Karen's settlement, the motion for summary judgment was granted in error.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

ALEXANDER, J., with whom SAUFLEY, C.J., joins, dissenting.

[¶ 19] I respectfully dissent. The Superior Court correctly determined that James Parent waived his claim for loss of consortium by his willful failure to join his claim with Karen Parent's claim for medical malpractice, after he was informed of the malpractice claim and its pending settlement. The Superior Court's action is supported by the RESTATEMENT (SECOND) OF TORTS § 693 (1977) and precedent in other states, cited by the Court.

[¶ 20] The importance of requiring joinder of a consortium claim with a viable principal claim of which the consortium claimant has notice is demonstrated particularly well here. The possible pendency of the consortium claim was apparently used as a bargaining chip in the divorce property settlement, and may have delayed resolution of the principal claim. In effect, the potential consortium claim may have been used to aggravate the individual with whom James Parent was asserting a loving relationship to support his claim.

[¶ 21] A joinder requirement would support the justice system's goals of achieving finality of judgments and securing "the just, speedy and inexpensive determination of every action." M.R. Civ. P. 1. We should not approve James Parent's willful delay in asserting his consortium claim, which had the effect of delaying, complicating, and increasing the cost of this action and the separate divorce action.

[¶ 22] I would affirm the judgment of the Superior Court.