STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV-09-252
                                                  R-.    -( ).)'·

ERYN M. STEELE,

        Plaintiff

    v.                                            **ORDER**

RYAN BOTTICELLO and
ROBERT C. BOTTICELLO,

        Defendants


        Eryn Steele brings this action against Ryan and Robert Botticello to

recover damages for loss of consortium allegedly resulting from an injury Ryan

Botticello negligently inflicted on Eryn's now-estranged husband, Christopher

Steele. The Botticellos' motion to dismiss is before the Court. Also before the

Court is Eryn Steele's motion to vacate the dismissal of *Christopher Steele v. Ryan*

*Botticello and Robert Botticello*, ALFSC-CV-08-068 (Me. Super. Ct., Yor. Cty., March

5, 2009) (Brennan, J.), set aside the settlement in that case, and consolidate that

case with this one.


## BACKGROUND

        In August 2006 defendant Robert Botticello and his minor son, defendant

Ryan Botticello, were on vacation in Old Orchard Beach, Maine. Ryan allegedly

struck Christopher Steele during this vacation, causing him serious injury. These

injuries included a fractured skull and caused Christopher's personality to

change. Plaintiff Eryn Steele was married to Christopher at the time, and she

1

alleges that the change in Christopher's personality led to the breakdown of their marriage.

Christopher Steele filed a personal injury suit against Robert and Ryan Botticello on March 7, 2008. In February 2009 Christopher and the Botticellos reached a settlement whereby Christopher signed a release of claims in exchange for $50,000. A stipulated dismissal was signed on February 22, 2009, and docketed on March 5, 2009. Eryn Steele claims that she and Christopher were estranged at that time, and as a result "she was unaware of the progress of [Christopher's] case or that he had settled it." Eryn filed her own complaint against the Botticellos on April 30, 2009 alleging recklessness and negligence, and seeking to recover for loss of consortium. The Botticellos filed this motion to dismiss on September 8, 2009.

In their motion, the Botticellos claim that the Law Court's recent decision in *Brown v. Crown Equipment Corp.*, 2008 ME 186, 960 A.2d 1188, decided on December 11, 2008, changed prior law and allows them to assert Christopher's release of claims against Eryn's derivative action for loss of consortium. Eryn opposes the Botticellos' motion and on October 23, 2009 filed a motion arguing that if the Botticellos' interpretation of *Brown* is correct, then she was an indispensable party to her husband's earlier action because the settlement has prejudiced her rights. Eryn argues that the settlement should be set aside for nonjoinder.

2

## DISCUSSION

### 1. The Botticellos' Motion to Dismiss

"A motion to dismiss tests the legal sufficiency of the complaint." *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)). The Court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *McAfee*, 637 A.2d at 465).

"The general rule is that only the facts alleged in the complaint may be considered" without transforming the motion to dismiss into a motion for summary judgment. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43, 47. An exception to this rule "allows a court to consider official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint . . . when the authenticity of such documents is not challenged." *Id.* at ¶ 9, 843 A.2d at 48.

In this case the Botticellos' motion to dismiss is based primarily on the release of claims signed by Christopher Steele. The pleadings in this case do not contain any reference to Christopher Steele's action or the resolution of that action, so on this motion to dismiss the Court can only consider the release if it fits one of the exceptions announced in *Moody*. The release is not a public document, and is not referenced in either Eryn Steele's complaint or the Botticellos' answer

The Botticellos argue that the release is central to Eryn's claim and thus eligible for consideration, but the Court disagrees. Documents that provide the basis for a cause of action, such as the contract in an action for breach, are central

3

to a plaintiff's claim. *See id.* at ¶ 12 (court could consider document containing terms of contract); *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (court could consider document on which plaintiff's claims were based). Eryn's action arises from her marital status and Christopher's injuries, not from the release. Thus, while the release may be central to the Botticellos' defense, it is peripheral to Eryn's claim. The release does not fit any of the exceptions and the Court will not consider it on this motion.

Res judicata provides a potential alternative ground for dismissal in this case.

> [T]he doctrine of res judicata bars the relitigation in a present action of all issues that were tried, or may have been tried, in a prior action if: (1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters present for decision now were, or might have been, litigated in the prior action.

Currier v. Cyr, 570 A.2d 1205, 1208 (Me. 1990). Unlike Christopher Steele's release, the entry of final judgment in his action against the Botticellos is a public document that this Court may consider on this motion. However, assuming without deciding that the final judgment in that action could preclude Eryn from raising the issue of loss of consortium now, this Court still cannot grant the Botticellos' motion to dismiss. The doctrine of res judicata cannot be asserted against a party that did not have adequate notice of the prior action. *Freeport v. Greenlaw*, 602 A.2d 1156, 1160 (Me. 1992) (citing *Restatement (Second) of Judgments* § 83(2)(a) (1982)). The record does not indicate whether Eryn had notice of the prior action, and the Court cannot say that the resolution of that action precludes her current claims as a matter of law.

4

The Botticellos have failed to raise an affirmative defense in their motion because Christopher Steele's release of claims is not before the Court, and because the dismissal of Christopher's action does not preclude Eryn's current action as a matter of law. Therefore, the Botticellos' motion to dismiss is denied.

## 2. Eryn Steele's Motion to Vacate Dismissal, Consolidate, and Set Aside Settlement

Eryn Steele's motion to vacate the dismissal of Christopher Steele's action is essentially a Rule 24 motion to intervene in that action coupled with a Rule 60(b) motion to set aside the judgment. *See* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 60.12 at 77 (2d ed. 1970) (party in interest can probably petition for review of judgment by combining Rule 24 with Rule 60). "The relief from a final judgment under Rule 60(b) . . . is subject to the exercise of a sound discretion by the trial court upon competent evidence supporting one or more of the reasons for which relief is provided by the Rule . . . ." *Warren v. Waterville Urban Renewal Authority*, 290 A.2d 362, 365 (Me. 1972); *see* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 60.1 at 72 (2d ed. 1970) ("[W]hether any other ground exists for relief from a judgment must be proven by evidence."). Eryn has not placed any evidence before the Court to support her motion, so it is denied.

**The entry is:**

The Botticellos have failed to establish their affirmative defense on the pleadings and their motion to dismiss is **denied**. Eryn Steele has failed to place evidence before the Court supporting her motion to set aside the judgment in *Steele v. Botticello*, ALFSC-CV-08-068 (Me. Super. Ct., Yor. Cty., March 5, 2009) (Brennan, J.), and her motion is **denied**.

DATE: December 15, 2009

Roland A. Cole
Justice, Superior Court

6

------------------------------------------------------------------------

01 0000001120          DUNLAP, MARK
    415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600

| F | RYAN BOTTICELLO | DEF | RTND | 05/15/2009 |
|---|---|---|---|---|
| F | ROBERT C BOTTICELLO | DEF | RTND | 05/15/2009 |

02 0000002053          ROBITZEK, WILLIAM
    129 LISBON STREET PO BOX 961 LEWISTON ME 04243-0961

| F | ERYN M STEELE | PL | RTND | 04/30/2009 |
|---|---|---|---|---|

------------------------------------------------------------------------

01 0000001120          DUNLAP, MARK
    415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600

| F | RYAN BOTTICELLO | DEF | RTND | 05/15/2009 |
|---|---|---|---|---|
| F | ROBERT C BOTTICELLO | DEF | RTND | 05/15/2009 |

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV-09-252
                                                  *RAC-CUM-8/4, 2010*

ERYN M. STEELE,

                    Plaintiffs,

        v.                          STATE OF MAINE
                                    Cumberland, ss, Clerk's Office

RYAN BOTTICELLO AND                 AUG 04 2010          ORDER
ROBERT C. BOTTICELLO
                                    RECEIVED
                    Defendants


        Plaintiff Eryn M. Steele[1] brought this action against defendants Ryan and

Robert C. Botticello to recover for loss of consortium caused by an injury Ryan

allegedly inflicted on her now ex-husband. The defendants move for summary

judgment, and request permission to amend their complaint to add an

affirmative defense.

                              **BACKGROUND**

        Defendant Ryan Botticello allegedly assaulted Christopher Steele in Old

Orchard Beach, Maine, in August of 2006. (Supp. S.M.F. ¶ 3.) Christopher and

plaintiff Eryn Steele were married at this time. (Supp. S.M.F. ¶ 1.) On October 24,

2007, Christopher authorized his attorney to file a notice of claim against the

Botticellos. (Supp. S.M.F. ¶ 4.) He commenced a lawsuit for his personal injuries

approximately six months later on March 7, 2008. (Supp. S.M.F. ¶ 5.)

---

[1] The plaintiff changed her name after commencing this suit and is now Eryn M.
Soule. The court will continue to refer to the plaintiff as Ms. Steele for clarity and
consistency.

1

Ms. Steele knew about the injuries, and knew that Christopher was considering a lawsuit and had consulted an attorney. (Supp. S.M.F. ¶¶ 6–8.) She also knew that he had actually filed the suit, though she did not know precisely when. (Opp. S.M.F. ¶ 8.) Ms. Steele and Christopher last spoke face-to-face on December 31, 2008, after which Ms. Steele moved out of their shared residence. (Supp. S.M.F. ¶ 17.)

Christopher signed a release of claims against the Botticellos in exchange for $50,000 on February 24, 2009. (Supp. S.M.F. ¶ 23.) Stipulated dismissals were signed that February and docketed on March 5, 2009. (Supp. S.M.F. ¶ 24.) Ms. Steele learned about the settlement at that time or shortly thereafter. (Opp. S.M.F. ¶¶ 25–26; Christopher Steele Depo. at 24.) Ms. Steele never involved herself in Christopher's lawsuit and did not take part in his settlement negotiations with the Botticellos or their insurer. (Pl.'s Add'l S.M.F. ¶¶ 28–29.)

Ms. Steele filed this case against the Botticellos for loss of consortium on April 28, 2009. She claims that Christopher's personality changed after the assault, which she believes caused him to become abusive and led to the dissolution of their marriage. (Supp. S.M.F. ¶¶ 19–21.) The Botticellos move for summary judgment, arguing that Ms. Steele's claim derives from Christopher's personal injury claim and is thus barred by Christopher's release. Ms. Steele contends that her claim is independent and she should not be bound by the prior release under principles of contract law and fundamental fairness.

## DISCUSSION

As a preliminary matter, the defendants' motion to add an affirmative defense related to the release should be granted. Ms. Steele has not filed an

opposition to this motion, and the issue has clearly been raised and argued by both parties.

Prior to *Brown v. Crown Equipment Corp.*, Maine recognized loss of consortium as a separate and independent statutory claim held by spouses. 14 M.R.S.A. § 302 (2009); *Parent v. E. Me. Med. Ctr.*, 2005 ME 112, ¶ 14, 884 A.2d 93, 96. The Law Court comprehensively discussed the issue in *Hardy v. St. Clair*, 1999 ME 142, 739 A.2d 368, and *Parent v. Easter Maine Medical Center*, 2005 ME 112, 884 A.2d 93.

*Hardy* involved claims for negligence and loss and consortium brought by a husband and wife against the husband's employer. 1999 ME 142, ¶ 2, 739 A.2d at 369. The husband was employed as a member of a pit crew at a raceway. *Id.* As a condition of his employment he was required to sign a release and liability waiver. *Id.* He "was injured when a plank on a set of bleachers at the raceway reserved for members of the pit crews collapsed under him." *Id.* The trial court found that the release barred the husband's negligence claim, but did not bar the wife's loss of consortium claim. *Id.*

On appeal, the Law Court agreed that the release was effective against the husband. *Id.* ¶ 6, 739 A.2d at 370. Regarding the wife's claim, the Court noted that the release could not directly bar her "consortium claim because she did not sign it and was not a party to the contract." *Id.* ¶ 9, 739 A.2d at 371. The issue, then, was "whether, by expressly barring [the husband's] negligence claim, the [release] *indirectly* barred [the wife's] consortium claim. Stated otherwise," the Court declared that it "must determine whether a consortium claim is 'derivative' or 'independent.'" *Id.*

The Court noted that states were split on the question, and that those "adopting the derivative approach generally conclude that a cause of action for loss of consortium is subject to the same defenses available in the injured spouse's underlying tort action." *Id.* ¶ 10, 739 A.2d at 372 (citing Carol J. Miller, Annotation, *Injured Party's Release of Tortfeasor as Barring Spouse's Action for Loss of Consortium*, 29 A.L.R.4th 1200 (1981)). "States adopting the independent approach generally conclude that a consortium claim is not subject to such defenses." *Id.* After reviewing Maine's statutory law and precedent, the Court held that consortium claims are independent causes of action:

> Although derivative in the sense that both causes of action arise from the same set of facts, the injured spouse's claim is based on the common law of negligence while the claim of the other spouse is based on statutory law. Each claim is independent of the other and the pre- or post-injury release of one spouse's claim does not bar the other spouse's claim.

*Id.* ¶ 12, 739 A.2d at 372. The Court expressly reserved the question of "whether a loss of consortium claim may be subject to traditional common law or statutory defenses to the claims of the injured spouse." *Id.* ¶ 12 n.6, 739 A.2d at 372 n.6.

In *Parent v. Eastern Maine Medical Center*, a wife was misdiagnosed with breast cancer in the year 2000, and she filed a malpractice claim in 2001. 2005 ME 112, ¶¶ 3–4, 884 A.2d at 94. Her husband "was aware of the claim when it was filed, and he occasionally spoke with [his wife's] attorney," but he did not join in the action at that time. *Id.* ¶¶ 4, 7, 884 A.2d at 94. "In the summer of 2001, after [the wife] had filed her notice of claim, she and [her husband] separated. [The wife] subsequently filed for divorce." *Id.* ¶ 5, 884 A.2d at 94. On January 2, 2003 the wife informed her now ex-husband that she would be settling her claim soon, and did in fact settle it that January. *Id.* ¶ 6, 884 A.2d at 94. In May 2003 the husband filed his own claim for loss of consortium.

4

The Superior Court granted summary judgment for the defendants, reasoning that the husband's knowing failure to join the wife's claim "constituted a waiver of his loss of consortium claim . . . ." *Id.* at ¶¶ 8–9, 884 A.2d at 94–95. In doing so the Superior Court relied on the *Restatement (Second) of Torts* § 693 (1977), which reads in relevant part:

> [I]f the impaired spouse has begun an action for bodily harm, and then settled it and given a release, and the deprived spouse has stood by throughout with full knowledge of the conduct, it has been possible to join in the action at any time before it has become barred by the release, and the deprived spouse cannot now be permitted to maintain a separate action.

*Restatement (Second) of Torts* § 693, cmt. g (1977); *Parent,* 2005 ME 112, ¶ 8, 884 A.2d at 94–94.

The Law Court vacated the judgment. *Parent,* 2005 ME 112, ¶ 1, 884 A.2d at 93–94. The Court acknowledged that other jurisdictions are split on the question of "whether a person who fails to join in his spouse's tort action is barred from pursuing his own loss of consortium claim stemming from the same facts." *Id.* ¶ 10, 884 A.2d at 95. After examining the language and legislative history of 14 M.R.S.A. § 302 and prior judicial interpretations thereof, the Court concluded that "Maine's loss of consortium statute provides an individual with a wholly separate and independent right of recovery." *Id.* at ¶¶ 11–14, 884 A.2d at 95–96 (citing *Hardy v. St. Clair,* 1999 ME 142, 739 A.2d 368 (release signed by husband did not prevent wife's loss of consortium claim); *Dionne v. Libbey-Owens Ford Co.,* 621 A.2d 414 (Me. 1993) (damages awarded to wife for loss of consortium not subject to employer's workers' compensation setoff)).

"Given the Legislature's explicit grant of the right to bring a loss of consortium action in one's own name, and absent any evidence of legislative intent to require the mandatory joinder of loss of consortium claims," the Court

held that loss of consortium claims would not be barred by an injured spouse's release and thus did not have to be joined with the injured spouse's claim. *Id.* at ¶ 16, 884 A.2d at 96. The Court stated that the joinder rules of civil procedure provided an adequate safeguard against threats of double recovery or inconsistent obligations. *Id.* at ¶ 17, 884 A.2d at 96.

Justice Alexander, joined by Chief Justice Saufley, wrote a brief dissent indicating that he would have upheld the Superior Court's decision and adopted the Restatement's view. *Id.* at ¶¶ 19–21, 884 A.2d at 96 (Alexander, J., dissenting).

Three years after *Parent*, the Law Court again took up the consortium question in *Brown v. Crown Equip. Corp.*, 2008 ME 186, 960 A.2d 1188. In *Brown* the Court faced two questions certified from the First Circuit Court of Appeals. *Id.* ¶ 2, 960 A.2d at 1190. The first question addressed a manufacturer's duty to warn, and the second addressed how "a jury's dollar adjustment for comparative negligence [should] be applied where a portion of the original damages award is reduced pursuant to the statutory damage cap[.]" *Id.* A woman's husband had been killed in a forklift accident, and the majority of her award was for loss of consortium. *Id.* at ¶¶ 7–8, 960 A.2d at 1191. The consortium damages were to be reduced by both a statutory cap and the husband's contributory negligence, and the First Circuit needed to know the order in which to apply the two reductions. *Id.* at ¶ 26, 960 A.2d at 1195.

"In order to fully address the [second] question," the Law Court stated that it had to "determine whether a consortium claim is a derivative or independent claim." *Id.* at ¶ 23, 960 A.2d at 1194. Citing *Parent* and *Hardy*, the Court acknowledged that it had "previously treated loss of consortium claims as independent claims." *Id.* at ¶ 23, 960 A.2d at 1194–95. The Court then stated:

6

> After further consideration, we conclude that loss of consortium claims necessarily arise from the same negligent act as the underlying tort claims and are therefore subject to the same rules and limitations. Accordingly, we hold that a loss of consortium claim is a derivative claim, and to the extent our prior decisions have held otherwise, we overrule those decisions.

*Id.* at ¶ 23, 960 A.2d at 1195.

Now, this Court is being asked to determine whether and to what extent *Brown* has overruled *Parent* and *Hardy*. Ms. Steele champions a limiting interpretation of *Brown* that would keep the prior cases intact. In her view, *Brown* merely restates that a loss of consortium claim is derivative of an injured spouse's claim "in the sense that both causes of action arise from the same set of facts . . . ." *Hardy*, 1999 ME 142, ¶ 12, 739 A.2d at 372. The claims remain legally independent and an injured spouse's release continues to be ineffective against the other spouse's consortium claim. *See id.* This interpretation would read *Brown* as an affirmative answer to the question reserved in *Hardy*, i.e. "whether a loss of consortium claim may be subject to traditional common law or statutory defenses to the claims of the injured spouse." *Id.* ¶ 12 n.6, 739 A.2d at 372 n.6.

The context of *Brown* provides some support for this view, because in that case the Law Court was reducing a loss of consortium award for the injured spouse's contributory negligence. *Brown*, 2008 ME 186, ¶¶ 20–24, 960 A.2d at 1194–95. The problem with Ms. Steele's interpretation, however, is that it ignores the Law Court's sweeping language and express disavowal of *Parent* and *Hardy*'s reasoning. In *Hardy*, a pre-injury release signed by the husband did not bar the wife's loss of consortium action because the wife's claim was legally "independent" rather than "derivative." *Hardy*, 1999 ME 142, ¶¶ 12, 9, 739 A.2d at 371–72. In *Parent*, the injured wife's malpractice claim had no preclusive effect on the uninjured husband's consortium claim because the actions were

7

"independent," and joinder of the claims was not mandatory for the same reason. *Parent*, 2005 ME 112, ¶¶ 14, 16, 884 A.2d at 96. In *Brown*, the Law Court cited both of those examples before declaring that it had reconsidered its prior decisions, that loss of consortium claims are necessarily "derivative" rather than independent and "therefore subject to the same rules and limitations" as their underlying tort claims, and that prior decisions indicating otherwise were overruled. *Brown*, 2008 ME 186, ¶ 23, 960 A.2d at 1194–95.

This court cannot ignore or wish-away the Law Court's bold language. It expressly overruled prior case law and reversed its past holdings. While the Court had noted in the past that "[t]he terms 'derivative' and 'independent' are imprecise and may be misleading," the Court used those terms throughout *Hardy* and *Parent* to explain its detailed analyses and conclusions. *Hardy*, 1999 ME 142, ¶¶ 10 n.4, 11–12, 739 A.2d at 372 n.4, 372; *Parent*, 2005 ME 112, ¶¶ 13–15, 884 A.2d at 95–96. The Court then used those same terms when reversing itself in *Brown*. The Court's deliberate use of those terms and its explicit use of the word "overrule" make it very unlikely that the Court was merely addressing the question reserved in footnote six of *Hardy*. 1999 ME 142, ¶ 12 n.6, 739 A.2d at 372 n.6. This court also cannot disregard the Law Court's statement as "mere dicta," as Ms. Steele suggests it should. A natural reading of *Brown* indicates that the Court would decide *Parent* and *Hardy* differently today, and that a release of claims signed by an injured spouse can bar the other spouse's subsequent loss of consortium claim.

A corollary to this change in the law is that spouses with potential consortium claims must be joined in the underlying tort actions if possible, because the resolution of the tort action will prejudice the consortium plaintiff or

8

expose the defendant to the risk of duplicative litigation or inconsistent obligations. *See* M.R. Civ. P. 19(b); *Restatement (Second) of Torts* § 693, cmt. g (1977). As a general rule the tort defendant or injured spouse would bear the burden of including the consortium plaintiff. *See* M.R. Civ. P. 19(a) (2009). However, following the *Restatement* rule adopted by the Superior Court in *Parent*, an uninjured spouse who fails to join the underlying tort action after actual notice of its pendency will be estopped from asserting a consortium claim after the underlying action is resolved. *Parent*, 2005 ME 112, ¶¶ 19–21, 884 A.2d at 96 (Alexander, J., dissenting); *Restatement (Second) of Torts* § 693, cmt. g (1977).

Applying these rules, the court finds that Christopher Steele's release does bar Ms. Steele's loss of consortium claim against the Botticellos. Her consortium claim derives from his negligence claim, and is "therefore subject to the same rules and limitations." *Brown*, 2008 ME 186, ¶ 23, 960 A.2d at 1195. The release limits her ability to recover from the Botticellos to the same extent it limits Christopher, i.e. completely.

Ms. Steele defends her position with numerous scholarly arguments based in policy, history, and Maine statutory law, but the Law Court considered all of these arguments in *Hardy* and *Parent*. *See Hardy*, 1999 ME 142, ¶¶ 9–12, 739 A.2d at 371–72; *Parent* 2005 ME 112, ¶¶ 10–17, 884 A.2d at 95–97. The court must assume that the Law Court understood and considered these arguments when it summarily overruled those cases in *Brown*.

Ms. Steele also argues that she should not be bound by the release because it is a contract to which she was not a party. *Hardy*, 1999 ME 142, ¶ 9, 739 A.2d 371. As the Law Court explained in *Hardy*, the issue is not whether the release directly bars her claim. *Id.* Rather, the issue is whether the release indirectly bars

9

her claim based on the claim's "derivative" or "independent" nature. *Id.* In *Hardy* the Law Court found that the contract did not indirectly bar the consortium claim because it was "independent" from the underlying negligence claim. *Id.* ¶¶ 9, 12, 739 A.2d at 371–72. In *Brown* the Court held that consortium claims are "derivative" rather than "independent," and overruled *Hardy* to the extent that it decided differently. *Brown*, 2008 ME 186, ¶ 23, 960 A.2d at 1195. Since consortium clams are no longer "independent," it follows that a release of the underlying claim can indirectly bar the consortium claim even when the uninjured spouse is not a party to the contract.

Finally, Ms. Steele contends that she was an indispensable party to the underlying suit and Christopher should not be able to waive her rights without her involvement or permission. To remedy the situation, she asks that either she not be bound by the underlying release and judgment, or that the release and stipulated judgment be set aside and the underlying action consolidated with this one. This argument would have far more purchase if Ms. Steele had not known about Christopher's lawsuit against the Botticellos prior to its settlement.

The record contains disputes over precisely how much Ms. Steele knew and when she knew it, but there is no dispute that she knew of the lawsuit while it was pending and after Christopher's personality had negatively changed. (Opp. S.M.F. ¶¶ 3–4, 15, 20–21.) She nonetheless waited to assert her consortium claim until after Christopher had settled his claim with the Botticellos. While she was less involved than the husband in *Parent*, she did have actual notice that the underlying litigation was taking place and the *Parent* dissent's rationale applies. *See Parent*, 2005 ME 112, ¶¶ 8, 19–22, 884 A.2d at 94–95, 97 (citing Restatement (Second) of Torts § 693 cmt. g (1977)). Christopher or the defendants should have

10

joined Ms. Steele in that action, but when she received actual notice of the action's pendency the burden to become involved shifted to her. *See id.* ¶ 8, 884 A.2d at 94–95; Restatement (Second) of Torts § 693 cmt. g (1977). By failing to intervene, she waived her right to assert her consortium claim and is now estopped from bringing this separate action.

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. In the wake of the Law Court's decision in *Brown v. Crown Equipment Corporation*, the undisputed facts show that the release signed by Christopher Steele bars Ms. Steele's consortium claim. She is estopped from challenging the release's validity or application because she knew that Christopher's negligence action was pending but failed to intervene. The Botticellos' motion for summary judgment is granted. The court does not need to address the issue of claim preclusion raised by the parties.

**The entry is:**

Defendants Ryan and Robert Botticello's motion to add an affirmative defense and motion for summary judgment are granted.

DATE: August 4, 2010

Roland A. Cole
Justice, Superior Court

11

---------------------------------------------------------------------------

01 0000001120              DUNLAP, MARK
     415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600

| F | RYAN BOTTICELLO | DEF | RTND | 05/15/2009 |
| F | ROBERT C BOTTICELLO | DEF | RTND | 05/15/2009 |

02 0000002053              ROBITZEK, WILLIAM
     129 LISBON STREET PO BOX 961 LEWISTON ME 04243-0961

| F | ERYN M STEELE | PL | RTND | 04/30/2009 |