2011 ME 72

**Eryn M. STEELE**

v.

**Ryan BOTTICELLO et al.**

Supreme Judicial Court of Maine.

Argued: May 11, 2011.
Decided: June 28, 2011.

William D. Robitzek, Esq. (orally), Paul F. Macri, Esq., Berman & Simmons, P.A., Lewiston, ME, for Eryn M. Steele.

Mark E. Dunlap, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for Ryan and Robert Botticello.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶1] Eryn M. Steele appeals from a summary judgment entered in the Superior Court (Cumberland County, *Cole, J.*) in favor of Ryan and Robert Botticello concluding that her loss of consortium claim is barred by her ex-husband's settlement and release of his claim against the Botticellos for tortious assault. After review of the applicable case law, we conclude otherwise and vacate the summary judgment.

## I. BACKGROUND

[¶2] The following facts, viewed in the light most favorable to Steele as the non-moving party, are established in the summary judgment record. *Bonney v. Stephens Mem'l Hosp.*, 2011 ME 46, ¶4, 17 A.3d 123, 125.

[¶3] Eryn Steele[1] was married to Christopher Steele when Ryan Botticello allegedly assaulted Chris in August 2006. In March 2008, Chris sued Ryan and his father, Robert Botticello, for damages related to his injuries. The suit did not include a loss of consortium claim. Eryn was not a party to the suit, nor did she

1. Subsequent to filing the complaint in this action, Eryn changed her last name from Steele to Soule.

participate in the suit or subsequent settlement negotiations. However, Eryn knew about Chris's injuries, and she knew of the existence of his suit against the Botticellos while it was pending.

[¶ 4] Eryn believed that the alleged assault affected Chris's personality in a way that destroyed their previously close relationship and led her not to be able to live with him anymore. She asserts that Chris's temperament changed, he was getting angry at little things, and he began hitting her. Eryn moved out of the marital home in December 2008.

[¶ 5] In February 2009, Chris settled and released his claim against the Botticellos in exchange for $50,000. In settling Chris's claim, the Botticellos' insurer did not consider any potential claims by Eryn. In April 2009, Eryn sued the Botticellos for damages related to her loss of consortium pursuant to 14 M.R.S. § 302 (2010).[2] Eryn and Chris were divorced in March 2010.

[¶ 6] The Botticellos asserted the affirmative defense of release in their amended answer[3] and moved for summary judgment. After hearing argument, the court entered summary judgment in favor of the Botticellos. Relying on *Brown v. Crown Equipment Corp.*, 2008 ME 186, ¶ 23, 960 A.2d 1188, 1195, the court concluded that Chris's release barred Eryn's consortium claim because it was derivative of Chris's underlying tort claim. Eryn timely appealed.

## II. DISCUSSION

[¶ 7] The question presented is whether an injured person's settlement and release of a claim for personal injuries precludes that person's spouse from recovering for loss of consortium when the spouse was not a party to the settlement and release. The answer turns on the breadth of our holding in *Brown*, which we decided two months before Chris settled his claim against the Botticellos. *See id.* Before *Brown*, the outcome of this case would have been clear—Chris's settlement and release would not have barred Eryn's loss of consortium claim. *See Parent v. E. Me. Med. Ctr.*, 2005 ME 112, ¶¶ 13–14, 884 A.2d 93, 95–96; *Hardy v. St. Clair*, 1999 ME 142, ¶ 12, 739 A.2d 368, 372.

[¶ 8] We review the court's grant of a summary judgment de novo, *Parent*, 2005 ME 112, ¶ 10, 884 A.2d at 95, by (A) examining our relevant decisions on loss of consortium claims; (B) clarifying the extent to which our decision in *Brown* overruled earlier decisions; and (C) determining whether Chris's release barred Eryn's loss of consortium claim.

### A. Review of Loss of Consortium Case Law

[¶ 9] Because the parties dispute the extent of *Brown's* effect on our earlier loss of consortium decisions, we review our relevant decisions as a prelude to our examination of *Brown*.

[¶ 10] *Dionne v. Libbey–Owens Ford Co.*, 621 A.2d 414, 416–17 (Me.1993), considered whether the money damages recovered by a wife from a third-party tortfeasor on her statutory loss of consortium claim[4] that arose from her husband's

---

2. The loss of consortium statute provides, "A married person may bring a civil action in that person's own name for loss of consortium of that person's spouse." 14 M.R.S. § 302 (2010).

3. The court granted the Botticellos' motion to amend their answer at the same time that it granted their motion for summary judgment.

4. In *Dionne*, this Court analyzed the wife's loss of consortium damages as arising from the loss of consortium statute, 19 M.R.S.A.

workplace injury were subject to a lien by the husband's employer pursuant to the Workers' Compensation Act, 39 M.R.S.A. § 68 (1989) (now codified at 39-A M.R.S. § 107 (2010)). We concluded that the damages were not subject to the lien, recognizing that the Legislature created a separate right of the wife to bring a loss of consortium claim in her own name. *Dionne*, 621 A.2d at 417–18.

[¶ 11] Consistent with *Dionne*, in *Hardy*, we described a wife's loss of consortium claim as an independent cause of action that is separate from her injured husband's underlying tort claim. 1999 ME 142, ¶ 12, 739 A.2d at 372. There, the issue presented was whether the husband's pre-injury release of liability barred his wife's separate loss of consortium claim. *Id.* ¶¶ 2, 7, 739 A.2d at 369, 370–71. We reasoned that although a loss of consortium claim is "derivative in the sense that both causes of action arise from the same set of facts," the injured spouse's claim is based on common law, whereas the loss of consortium claim is based on a statute that establishes a separate right of the other spouse to sue "in that person's own name." *Id.* ¶ 12, 739 A.2d at 372 (quotation marks omitted); *see also* 14 M.R.S. § 302. Accordingly, we held that the husband's pre-injury release of liability did not bar his wife's independent loss of consortium claim. *Hardy*, 1999 ME 142, ¶ 12, 739 A.2d at 372. *Hardy* left open the question of whether a loss of consortium claim is subject to the same defenses applicable to the claim of the injured spouse. *Id.* ¶ 12 n. 6, 739 A.2d at 372.

[¶ 12] In *Parent*, we held that a wife's settlement of her medical malpractice claim did not bar her husband's independent loss of consortium claim because his joinder was not mandatory even though he was aware of the wife's claim when it was filed. 2005 ME 112, ¶¶ 4, 14, 16, 884 A.2d at 94, 96. This conclusion was based on our prior decisions in *Dionne* and *Hardy*, section 302's explicit grant of the right of a spouse to bring a consortium claim in the spouse's own name, and the absence of any indicia of legislative intent to require mandatory joinder of a party claiming loss of consortium. *Id.* ¶¶ 14, 16, 884 A.2d at 96.

[¶ 13] In sum, at the time we considered *Brown* in 2008, our prior decisions established that (1) although arising from the same underlying occurrence as the injured spouse's claim, a statutory loss of consortium claim can be asserted independently; (2) an injured spouse's pre-injury release of liability does not bar the other spouse's independent loss of consortium claim; and (3) an injured spouse's settlement of a tort claim does not bar the other spouse's independent statutory loss of consortium claim because joinder in the underlying claim is not mandatory.

[¶ 14] In *Brown*, we considered how to apply a comparative negligence offset[5] to wrongful death damages awarded for the surviving spouse and/or minor children's loss of consortium.[6] 2008 ME 186, ¶¶ 2,

---

§ 167-A (1981), which was the predecessor to the current statute, 14 M.R.S. § 302 (2010). *See* P.L.1995, ch. 694, §§ B-1, C-1 (replacing section 167-A with the gender-neutral section 302).

5. More specifically, in *Brown*, the question presented was whether the statutory cap on wrongful death damages for loss of consortium should be applied before or after those damages were reduced for comparative negligence. *Brown v. Crown Equip. Corp.*, 2008 ME 186, ¶¶ 18, 22, 960 A.2d 1188, 1194. To

address this question, we first had to determine whether the comparative negligence offset applied to the loss of consortium damages as well as to the economic and pain and suffering damages. *Id.* ¶¶ 8, 22–23, 960 A.2d at 1191, 1194. That issue turned on whether a loss of consortium claim was derivative or independent of the underlying claim. *Id.* ¶ 23, 960 A.2d at 1194–95.

6. Although in *Brown* we referred to a portion of the surviving wife's damages as "loss of consortium" damages, her claim was made

22, 960 A.2d at 1190, 1194. Citing *Hardy* and *Parent,* we stated, "We have previously treated loss of consortium claims as independent claims," but

> [a]fter further consideration, we conclude that loss of consortium claims necessarily arise from the same negligent act as the underlying tort claims and are therefore subject to the same rules and limitations. Accordingly, we hold that a loss of consortium claim is a derivative claim, and to the extent our prior decisions have held otherwise, we overrule those decisions.

*Id.* ¶ 23, 960 A.2d at 1194–95.

[¶ 15] *Brown* thus concluded that loss of consortium damages awarded as part of a wrongful death claim are subject to reduction pursuant to the comparative negligence statute, 14 M.R.S. § 156 (2010), and that a jury may consider the deceased spouse or parent's comparative fault when determining loss of consortium damages.

**B. The Extent to Which *Brown* Overruled *Hardy* and *Parent***

[¶ 16] As we acknowledged in *Hardy,* "[t]he terms 'derivative' and 'independent' are imprecise, and may be misleading" as they are used to describe loss of consortium injuries and loss of consortium claims. *Hardy,* 1999 ME 142, ¶ 10 n. 4, 739 A.2d at 371. A loss of consortium is an original injury that, on one hand, is independent because it is unique to one spouse, but on the other hand, is derivative of the injury to the other spouse. *See id.* ¶ 12, 739 A.2d at 372. Similarly, a loss of consortium claim is independent because it a statutorily-created right that may be asserted separately from the injured spouse's underlying claim, but at the same time, it is derivative because it arises from the same act that gave rise to the underlying claim and is therefore subject to the same rules and limitations. *See id.; Brown,* 2008 ME 186, ¶ 23, 960 A.2d at 1195; *see also* Jo–Anne M. Baio, Note, *Loss of Consortium: A Derivative Injury Giving Rise to a Separate Cause of Action,* 50 Fordham L.Rev. 1344, 1352–53 (1982) (contrasting loss of consortium claims with derivative claims of shareholders and insurance companies, which can only enforce the rights of corporations and insureds).

[¶ 17] Notwithstanding the imprecision of these key terms, our decision in *Brown* clearly overruled *Hardy* and *Parent* to the extent that those decisions' characterization of a loss of consortium claim as wholly independent, and not derivative, meant that a loss of consortium claim is not subject to the same rules, limitations, and defenses as the underlying tort claim. In effect, *Brown* answered affirmatively the question left open in *Hardy* as to "whether a loss of consortium claim may be subject to traditional common law or statutory defenses to the claims of the injured spouse." *See Hardy,* 1999 ME 142, ¶ 12 n. 6, 739 A.2d at 372. *Brown,* however, did not undermine or alter *Hardy* and *Parent's* shared premise that a loss of consortium claim may be brought separately from the underlying tort claim and, in that respect, is more accurately described as capable of being asserted independently. Read together, *Brown, Hardy,* and *Parent* instruct that a

pursuant to the wrongful death statute, which does not mention "loss of consortium," but provides for the personal representative of the deceased to recover damages "for the loss of comfort, society and companionship of the deceased" for the benefit of the surviving spouse and/or any minor children. *See Brown,* 2008 ME 186, ¶ 8, 960 A.2d at 1191;

*compare* 18–A M.R.S. § 2–804(b) (2010) (wrongful death statute), *with* 14 M.R.S. § 302 (loss of consortium statute). The phrases, however, are essentially synonymous. *See* Black's Law Dictionary 351 (9th ed.2009) (defining "consortium" to include "society, affection, and companionship").

loss of consortium claim and its underlying claim may be separately pursued even though the spouse's loss of consortium injury derives from the other spouse's bodily injury, both claims arise from the same set of facts, and both claims are subject to the same defenses. Because the two actions may be brought separately, they may also be settled separately, and the release of one claim does not necessarily preclude the other.

C. Eryn's Loss of Consortium Claim

██ ██ [¶ 18] Eryn argues that her loss of consortium claim is still viable because she was not a party to Chris's release of claims, there is no danger of the Botticellos being exposed to double recovery, and the Botticellos failed to join her as a party to the case.[7]

██ [¶ 19] Consistent with our clarification of *Brown*, section 302 establishes Eryn's independent right to recover damages for loss of consortium. *See Parent*, 2005 ME 112, ¶ 14, 884 A.2d at 96; *Hardy*, 1999 ME 142, ¶ 12, 739 A.2d at 372. Her claim is not directly barred by Chris's settlement and post-injury release of claims because she was not a party to that agreement. *See Hardy*, 1999 ME 142, ¶¶ 9, 12, 739 A.2d at 371, 372. Nor is her claim barred by her failure to join or be joined in Chris's tort claim even though

she was aware of his claim. *See Parent*, 2005 ME 112, ¶ 16, 884 A.2d at 96. Furthermore, Chris's settlement does not limit Eryn's damages because, in settling Chris's claim, the Botticellos' insurer did not consider any potential claims by Eryn and, therefore, Eryn's claim does not threaten the Botticellos or their insurer with a double recovery or inconsistent obligations.[8] *See id.* ¶ 17, 884 A.2d at 96–97.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

7. Eryn also argues that the Botticellos had the burden to join her as a party. However, there is no statutory requirement that a party asserting a loss of consortium claim be joined in the underlying tort claim. *Parent v. E. Me. Med. Ctr.*, 2005 ME 112, ¶¶ 14–16, 884 A.2d 93, 96. Nor is mandatory joinder required by rule in this instance. The Maine Rules of Civil Procedure provide, "A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action...." M.R. Civ. P. 19(a). In this case, complete relief could be accorded be-

tween Chris and the Botticellos without Eryn's participation, and Eryn was not a "person [who] claims an interest" until she asserted her loss of consortium claim. As a result, Eryn was not a party subject to mandatory joinder within the meaning of Rule 19(a).

8. As we noted in *Parent:* "To the extent that allowing separate actions presents a real threat of double recovery or inconsistent obligations, there is an adequate remedy available to defendants under [M.R. Civ. P. 19(a) ("Persons to Be Joined if Feasible")]." 2005 ME 112, ¶ 17, 884 A.2d at 96. Joinder, therefore, may represent the better practice; however, it is not mandatory.